29 N.J. Super. 116 (1953)
101 A.2d 598
THE STATE OF NEW JERSEY, BY THEODORE D. PARSONS, ATTORNEY-GENERAL OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
AMERICAN-HAWAIIAN STEAMSHIP COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided December 21, 1953.
*120 Mr. Theodore D. Parsons, Attorney-General, and Mr. Osie M. Silber, Deputy Attorney-General, for the State.
The following are the attorneys appearing for the State of New Jersey, being specially appointed to prosecute on behalf of the State; and the several attorneys representing the defendant corporation and other corporations similarly involved:
*121 Mr. Louis Eisenstein, appearing for plaintiff; Messrs. Robert P. Hazelhurst and Pitney, Hardin & Ward for defendants American-Hawaiian Steamship Company and American Smelting and Refining Company, C-144/52.
Mr. Aaron Van Poznak for plaintiff; Messrs. Robert P. Hazelhurst and Pitney, Hardin & Ward for defendants The Borden Company, C-597/52, Crucible Steel Company of America, C-599/52, Driver-Harris Company, C-598/52, and Otis Elevator Company, C-957/52.
Mr. Emerson Richards for plaintiff; Messrs. Robert P. Hazelhurst and Pitney, Hardin & Ward for defendants National Union Radio Corporation, C-808/52, New York Shipbuilding Corporation, C-808/52, Phelps Dodge Copper Products Corporation, C-807/52, Taylor-Wharton Iron and Steel Company, C-1138/52, United States Rubber Company, C-1145/52.
Mr. Robert L. Clare, Jr., for defendants Tung-Sol Electric Inc., C-829/52 and Worthington Corporation, C-834/52.
Mr. Thornton C. Land, for defendants Curtis-Wright Corporation, C-803/52, Wright Aeronautical Corporation merged into Aero Holding Corporation, C-846/52, and Wright Aeronautical Corporation merged into Curtis-Wright Corporation, C-799/52.
Messrs. Josiah Stryker, Valdemar Beeken and Stryker, Tams & Horner for defendant United States Steel Corporation, C-1137/52.
Mr. H. Collin Minton, Jr., appearing for defendant F.W. Woolworth Co. (Messrs. Minton, Dinsmore & Lane, attorneys), C-835/52.
The opinion of the court was delivered by SCHETTINO, J.S.C.
This opinion is applicable to a number of cases which have been argued together and *122 duplicates will be filed in all of those causes. For convenience, the opinion is captioned in one of the causes and the names of all counsel who participated in the briefing or argument are set forth above.
These proceedings are brought by the State of New Jersey for judgments compelling defendant corporations to deliver certain intangible property to the State Treasurer for protective custody pursuant to N.J.S. 2A:37-29 et seq. Orders to show cause issued to defendant corporations who raise constitutional and other objections which are now here for decision.
Chapter 304 of the Laws of 1951, effective July 13, 1951, amended the prior escheat statute and added the additional method for escheat which is here involved. The earlier statute, N.J.S. 2A:37-11 et seq., provided for judgment of escheat without an intermediate custodial procedure. The provisions of the earlier statute, prior to the 1951 amendment, are summarized in State v. Standard Oil Co., 5 N.J. 281 (1950), affirmed 341 U.S. 428, 71 S.Ct. 822, 95 L.Ed. 1078 (1951), wherein challenges to their validity were determined.
The pertinent provisions of the 1951 law, establishing the additional method for escheat, including the custodial provisions here involved, are these. N.J.S. 2A:37-29 provides:
"In addition to the method provided for the escheat generally of personal property as defined in article 2 of this chapter, an alternate method may be employed in certain cases defined in this article 3. By this latter method the state may take into its protective custody property consisting of cash, dividends, interest or wages owed by any corporation organized or doing business under the laws of this state, belonging to any person remaining unknown, or whose whereabouts is unknown, or whose property remains unclaimed as defined herein for a period of 5 successive years; and after a period of protective custody has expired as herein prescribed, the state may proceed to escheat such property to itself."
Article 2 refers to the earlier statute mentioned above as amended, and article 3 is the article containing the alternate method.
*123 N.J.S. 2A:37-30 provides:
"Whenever a corporation organized under the laws of this state shall have custody or possession of, or shall have deposited with or given to an agent or trustee residing within or without the state custody or possession of, any moneys which are or shall be payable to any person as a dividend upon the capital stock, preferred or common, of the corporation, or as interest payable upon the corporation's bonds, indentures, notes or other formal instruments evidencing the indebtedness of the corporation, or any moneys payable as wages from the corporation to any person, and whenever any person or any corporation organized under the laws of any other state and authorized to do business in this state shall have custody or possession of any moneys payable by such person or corporation to any person as wages earned within this state, or of any moneys otherwise having a situs within this state, which moneys are payable to any one person in any of the categories above enumerated and the owner of, beneficial owner of, or person entitled to the same has been and remains unknown for the period of 5 successive years, or the whereabouts of such person has been and remains unknown for the period of 5 successive years, or such personal property has been and remains unclaimed for the period of 5 successive years, then the superior court may in a summary action brought in the name of the state of New Jersey by the attorney general or such attorney-at-law as he may designate, direct the corporation or other person aforesaid to deliver such moneys to the state treasurer for safekeeping."
N.J.S. 2A:37-31 provides:
"Upon the entry of the judgment in the action, a copy of the judgment shall be served upon the corporation, or other person aforesaid, who shall forthwith deliver the said moneys to the state treasurer, together with a list of the individual amounts, the names, if known to the corporation or other person aforesaid, of the owners or beneficial owners of, or persons entitled to, such moneys, the last-known address of such persons, and any other information he may have relating to the last-known address of any person having an interest in, together with any other information relating to, such personal property or the whereabouts of such owner."
N.J.S. 2A:37-32 provides:
"The state treasurer shall thereupon mail a letter or post card to each person named in the list, to his last-known address, as shown by such list, informing him that the state treasurer holds such moneys in the amount designated in the list as his property, for the benefit of the person therein named, and that if said *124 person does not, in writing, make claim to such moneys within 2 years from the date of such notice, an action will be instituted to escheat such moneys to the state in conformity with this article. The state treasurer shall also mail a similar notice to the attorney general of the state where such person had his last known address, if such address is without the state of New Jersey, advising him to present any claim that such state might have to such money. If a claim is made to the state treasurer within such period of 2 years, and he shall determine that the claim is valid, he shall pay the moneys so claimed to the person entitled thereto. If the state treasurer shall determine that the claim is not valid, he shall reject the claim. The claimant may thereupon apply to the superior court, chancery division, for a review of his determination, and the claim shall thereupon be heard and determined, de novo."
N.J.S. 2A:37-33 provides:
"The payment of the said moneys by the corporation or other person to the state treasurer pursuant to the provisions of this article shall, as respects such moneys, automatically operate as a full, absolute and unconditional release and discharge of the corporation or other person from any and all claims, demands or liability to the person whose moneys have been paid to the treasurer, and such payment may be pleaded as an absolute bar to any action brought against such corporation or other person by any person whatsoever. Any right to such moneys which any claimant may have shall thereby be transferred against, and shall become the obligation of, the state."
N.J.S. 2A:37-34 provides:
"If moneys so deposited with the treasurer shall remain unclaimed for the period of 2 years from the date of the mailing of the letter or post card to the person listed as the owner (after the 5-year period such moneys were in the custody or possession of the corporation or of its agent or trustee), the said moneys shall escheat to the state and the treasurer shall inform the attorney general thereof."
N.J.S. 2A:37-36 provides the Attorney-General, or his designee, "shall thereupon" bring a summary action "for the escheat of the said moneys to the state of New Jersey." N.J.S. 2A:37-37 and 38 provide for notice of the action, and N.J.S. 2A:37-39 reads:
"If no person shall file a claim or appear at the hearing to substantiate a claim, or where the court shall determine that a claimant is not entitled to the moneys claimed by him, then, in *125 either event, the court shall enter a judgment that the personal property described in the complaint has escheated to the state."
The court may reopen the judgment within seven years for the repayment to a claimant who did not have actual knowledge of the action for escheat, with 2% interest from the date of the original judgment. N.J.S. 2A:37-40. The State Treasurer is authorized to repay a claim of less than $50 without reopening the judgment. N.J.S. 2A:37-43.
The State Treasurer is authorized to invest the moneys upon his initial receipt thereof and to make temporary loans up to 90% therefrom for the use of any department of the State. N.J.S. 2A:37-41.

I.
It is asserted that the custodial provisions are unconstitutional for want of procedural due process. It is not disputed that due process in its procedural aspect is afforded the corporate defendants themselves, but it is urged such due process is denied the owner of the unclaimed property and that this denial will leave defendants amenable to judgment in favor of such owner in a later proceeding notwithstanding the judgment for custody and the immunity from further suit which the statute purports to give defendants upon payment to the State Treasurer pursuant to the judgment. N.J.S. 2A:37-33 quoted supra.
It is pointed out that the statute makes no provision for notice to the owner prior to the entry of the custodial judgment. It is urged that due process requires notice which will afford an opportunity to be heard before judgment and that the provision for notice contained in N.J.S. 2A:37-32, quoted supra, and the cited provisions for notice in connection with the later action for escheat, cannot remedy the constitutional failure. Defendants say the custodial judgment affects the rights of the owner in substantial aspects, to wit, the owner is deprived of his remedy against the defendant and is relegated to a proceeding against the State, and in order to pursue it, might well be required to come to this jurisdiction from a distant one in which he might otherwise *126 have prosecuted his claim. Additionally, it is said that the owner is deprived of his right to trial by jury and, should he recover from the State, his claim would be reduced by the fees and expenses allowed and incurred in the custodial action.
The alternate method must be considered as a whole. The State may, but need not, initiate proceedings under this method, but if it does, it must pursue the method to a conclusion, including the institution and prosecution of a final action for escheat. Hence, the sufficiency of notice must be measured by the entire procedure and not merely by the initial step as if the initial step could be taken and the rights of the owner concluded finally at that stage.
The procedure, it seems to me, is similar to that used in conventional actions commenced by attachment in which seizure is made without prior notice to the owner of the intangible or tangible as the case may be. Due process requires notice to the owner before his rights in the property are concluded, but it has never been suggested that the attachment itself and the change of custody which may follow are inhibited by the due process clause unless notice precedes the attachment and seizure thereunder. In net effect, the statute provides a technique of attachment which the exigencies of the situation require. The State may not know what property to attach, and hence it is appropriate that the attachment proceeding assume a form in which the debtor may be required to disclose what is available for attachment. The judgment that defendants turn over the property to the State differs in no essential respect from an order for attachment, the difference being merely that the intervention of the sheriff is obviated by the direction to defendant to turn the property over to the State Treasurer. The State Treasurer is as appropriate a custodian as would be the sheriff or the clerk of a court. Cf. Standard Oil Co. v. State of New Jersey, 341 U.S. 428, at page 438, footnote 9, 71 S.Ct. 822, at page 828, 95 L.Ed. 1078 (1951); Anderson National Bank v. Luckett, 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692 (1944); Security Savings Bank v. People *127 of State of California, 263 U.S. 282, 288, 44 S.Ct. 108, 68 L.Ed. 301, 31 A.L.R. 391 (1923).
In Connecticut Mutual Life Ins. Co. v. Moore, 333 U.S. 541, 68 S.Ct. 682, 92 L.Ed. 863 (1948), rehearing denied 334 U.S. 810, 68 S.Ct. 1014, 92 L.Ed. 1741 (1948), the court said that it saw no constitutional reason why a state may not proceed administratively to take possession of abandoned property, rather than to adopt a plan through the judicial process (333 U.S., at page 547, 68 S.Ct. 682, 92 L.Ed. 863). There the change of custody was accomplished by statutory mandate to the debtor to deliver over to an administrative official subject to penalty for failure. Although it is true that the statute there required advertisement before the turnover, yet due process was found, as I read the case, not in that notice but in the provision for notice in the judicial proceeding which followed the transfer of custody.
Of course, as stated above, the owner's rights in the property may not be terminated by judgment of escheat without notice and opportunity to be heard. The notice provided in N.J.S. 2A:37-37 and 38 equals the notice held sufficient in the Standard Oil case, supra, subject to a possible exception, to which I shall presently refer. Although it is true that in an attachment suit the judicial proceeding is continuous to judgment, whereas here a second proceeding follows a two-year interlude, yet no constitutional consequence can inhere in this difference. The controlling facts are that the second stage (which could readily have been fashioned by the statute as a second step in the original cause) is mandatorily required to be initiated and the two-year hiatus is reasonably calculated better to preserve the rights of the unknown or missing owner. The notice provided in N.J.S. 2A:37-32, supra, would seem to be an additional measure for the protection of the owner above and beyond the notice required in connection with the second phase.
If it should be thought that notice must follow promptly after the seizure, the provisions of N.J.S. 2A:37-32 would *128 seem sufficient, if one keeps in mind the later notice required with respect to the action for escheat. Notice mailed to the last known address is criticized as inadequate upon the hypothesis that if that address were presently correct, the intangible would have been claimed. This argument presupposes, contrary to the statutory presumption, that the claimant did not in fact abandon his claim, as well as the accuracy of the defendant's prior efforts to reach the claimant. Moreover, it has been held that some element of notice may be found in the circumstances that the owner is chargeable with the law of the state in which his property is situate and in the seizure itself. State by Parsons v. Standard Oil Co., supra (5 N.J., at 306).
I referred to an exception to the statement that the notice provided in connection with the escheat action has already been upheld. The exception is the provision in N.J.S. 2A:37-37 that the court may dispense with publication if the amount involved is less than $5, in which event the sole notice would be by mail. Reference is made to the observations of our Supreme Court in State by Parsons v. Standard Oil Co., supra (5 N.J., at 310) with respect to claims less than $50. The requirements of due process vary with circumstances. It would be too much to require advertisement with respect to items less than $5. Compare Lawton v. Steele, 152 U.S. 133, 141, 14 S.Ct. 499, 38 L.Ed. 385 (1894), in which it was held that an offending article may be forfeited without formal condemnation where the value involved is so small that it would belittle the dignity of the judiciary to require resort to its process. Although differences in the subject matter are apparent, yet the philosophy of that opinion supports this view.
But if I should be wrong in my appraisal of the constitutional sufficiency of the notice provisions with respect either to the custodial judgment or to the final judgment of escheat, it does not follow that the statute is unconstitutional. A statute which creates a cause of action will not fall because it omits to prescribe the process by which the right shall be enforced. Procedural due process may be *129 satisfied by other statutory provisions. It may be satisfied by the practice or rules of the court. Cf. State v. Otis Elevator Co., 12 N.J. 1, 17 (1953). It is of no concern to the federally guaranteed right whether it is honored by the action of the Legislature or the action of the judiciary. If the statute is inadequate in this regard, proper notice may be ordered by a court of equity under its inherent power to satisfy the requirements of procedural due process or under R.R. 4:4-5 (c), formerly Rule 3:4-5 (c). Our State Constitution expressly provides our Supreme Court shall make rules governing the practice and procedure in all courts in the State. Art. VI, Sec. 2, par. 3. Hence, if I believed the statutory scheme to be inadequate, I could order appropriate notice to be given before judgment for custody; and if the State Supreme Court should, upon review of my judgment, differ with my view, I cannot foreclose the probability that our Supreme Court would thereupon adopt the necessary rules if existing practice were thought insufficient.
In short, procedural due process is satisfied if the required notice precedes final determination of rights, and if a judgment entered upon this opinion should be reversed for want of proper notice, the action would not be dismissed, but rather the cause would be remanded with direction with respect to notice. Procedural due process concerns itself with the judgment rather than the statute creating the cause of action. I do not think Wuchter v. Pizzutti, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1928), is to the contrary. There the statute authorized service of process upon a non-resident motorist by service upon a state official. The statute was held invalid for want of a provision making it probable that notice would be transmitted to defendant. The court expressly noted that it was not referred to any other applicable law which would insure such notice (276 U.S., at page 19, 48 S.Ct. 259, 72 L.Ed. 446.) The effect of the decision is that a personal judgment based upon service upon a state official was void for want of due process, notwithstanding that notice actually reached the defendant by some procedure not prescribed by law. It does not follow *130 that an escheat statute would fall in its substantive aspects if it were silent as to process or if its provisions for process were inadequate, where proper process can be afforded either under the inherent power of the court or under rules of court prescribed pursuant to the express authority of the State Constitution.
It is here convenient to note, in passing, defendants' alternate contention that all of the provisions of the statute prescribing practice and procedure infringe the State Supreme Court's power over the subject. As indicated above, procedural due process of law is not concerned with a determination of a domestic problem as to where the power over practice and procedure may reside.
Defendants argue the custodial proceeding fails to protect them against further suit by the owner or by another state seeking to escheat the same property. There can be no question about the sufficiency of a judgment for escheat in view of the Standard Oil case (assuming, of course, the power of the State to deal with the property, which question I will consider hereinafter). But defendants contend that like protection is not afforded by the preliminary judgment for custody and payment thereunder despite the assurance contained in N.J.S. 2A:37-33, supra. There are several aspects to the issue thus raised.
Let us first consider a suit brought by the owner against defendant in this State after the events described in N.J.S. 2A:37-33. As to property rights arising after the operative date of the statute, the effectiveness of the statutory bar to the second suit is easily demonstrated. It is elementary that the Legislature may reduce the statutory period of limitations or impose one where none had existed. That power necessarily encompasses a provision like the one in question which does not go the length of terminating the owner's right at the end of five years, but rather continues the right against the State. Viewed accordingly as a measure in the nature of a statute of limitations, the constitutionality of the provision seems clear. The analogy, however, cannot conclude the inquiry as to existing property *131 because it is equally settled that a reduction in the period of limitations must, as to existing rights, provide a reasonable opportunity for their enforcement, and no such reservation appears in this statute.
Hence, as to intangible rights in existence on the effective date of the act, the question is whether a sovereign state, possessed of power to protect its interest and that of the missing owner in property which is presumptively abandoned, may by custodial measures and without prior notice to the owner terminate his claim against the debtor and transfer it against the state. It seems to me that Anderson National Bank v. Luckett, supra (321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692), upholds the validity of this provision. It is true that there the Kentucky statute provided a mode of constructive notice prior to the turnover, but the court cited with apparent approval earlier cases in which seizure itself was deemed to be sufficient notice (321 U.S., at page 246, 64 S.Ct. 599, 88 L.Ed. 692).
As there pointed out, 321 U.S., at page 246, 64 S.Ct., at page 606, 88 L.Ed. 692:
"What is due process in a procedure affecting property interests must be determined by taking into account the purposes of the procedure and its effect upon the rights asserted and all other circumstances which may render the proceeding appropriate to the nature of the case."
Keeping in mind the protective nature of the custodial step, the full preservation of the owner's rights, augmented by what amounts to protection against the bar of the six-year statute of limitations where that period would otherwise be controlling, and the multiple notices which thereafter will precede a judgment for escheat, it cannot be said that the bar of a suit against the debtor without notice prior to the seizure exceeds the power of the State. Adverting again to the analogy of attachment proceedings, the statute would equal one which provided that upon seizure by attachment the owner's remedy shall thereafter be addressed to the property itself in the hands of the court. Such statutes are *132 reasonable adjustments of the conflicts and problems which arise from several claims to the same property.
The suggestion that unconstitutionality inheres in the abstract possibility that the State may be less able or willing to pay the owner's claim is rejected in Anderson National Bank v. Luckett, supra (321 U.S., at page 242, 64 S.Ct. 599, 88 L.Ed. 692).
Defendants cite Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). It is not in point. The statute there authorized the entry of judgments approving the accounts of trustees without appropriate notice to the beneficiaries. The opinion accordingly is inapplicable to a statute which provides merely for protective custody of abandoned property.
For discussion of other cases bearing upon this subject see 151 A.L.R. 836, 840.
But what of suit by the owner against defendants in another jurisdiction or a suit there by another state asserting a right to escheat? I see no difference between the plight of defendants in that situation and the predicament of a debtor who, after an attachment proceeding in one state, is sued in another by its creditor. Of course, all jurisdictions should strive to avoid double liability, but the possibility of multiple exposure and the trials and tribulations incident thereto seem unavoidable under a system in which justice is administered in multiple jurisdictions. It is not necessary to consider whether our statute as such would be entitled to full faith and credit, cf. Stacy v. Greenberg, 9 N.J. 390, 399 (1952), because due process of law does not guarantee freedom from several claims to the same property. I would assume that upon a second action being brought, defendants would plead the seizure by this State and by appropriate pleadings seek to avoid a double liability. With respect to proceedings thus brought by the owner, if defendant's effort should fail in another jurisdiction, defendant could then advance the owner's claim under our statute upon principles of equitable subrogation. If the second suit should be by another state claiming power to escheat, and *133 a judgment entitled to full faith and credit be there obtained and paid, again defendant could be subrogated to the owner's claim under our statute via subrogation to the title thereto vested in the other escheating state. Our statute in fact recognizes that the interest of other states, if superior to ours, will be acknowledged, and this is implicit in the provisions of N.J.S. 2A:37-32 and 37 for notice to the attorney-general of the state where the unknown or missing owner had his last known address. Lastly, the difficulties may perchance be resolved by proceedings between the states under State of Texas v. State of Florida, 306 U.S. 398, 59 S.Ct. 563, 830, 83 L.Ed. 817 (1939).
It is true that defendant corporations may suffer the burden of several litigations, but in the state of things, such injury does not equal a denial of due process in its procedural or, for that matter, in its substantive sense.
There is no force in the several aspects of possible detriment to the unknown or missing owner asserted by defendants. That he may be required to pursue his remedy in this State involves no constitutionally recognized injury. It is an inevitable consequence which must be accepted unless a state's power to escheat is to be so restricted as to be nullified. This same feature exists with respect to the escheat statute upheld in the Standard Oil case. With respect to the assertion that the owner will be saddled with a portion of the expenses of the action for custody, it is not necessary to consider the constitutionality of a deduction on that account since our statute does not provide for any deduction by reason of the custodial proceedings. As to the owner's alleged right to trial by jury, it is sufficient to say that if any constitutional provision assures it, our courts are capable of affording it.

II.
Defendants contend a period of five years is too short to support a presumption of abandonment. The authority of the Legislature is not unlimited, and the *134 nature of the property probably plays a role in determining the validity of the legislative decision, as do also the consequences to the owner of the property.
The intangibles involved in these proceedings are dividends on corporate stock, interest on corporate obligations described in the statute, and wages. Defendants recognize that a seven-year period has been sustained at least as to some intangibles. It is not clear why the line must be drawn there. It should be borne in mind that the five-year presumption here supports only a custodial measure and the property is not escheatable until a further period of two years expires. A court may not invalidate the legislative determination unless it is arbitrary. It cannot be judicially said that a five-year period is so unsupportable in reason as to require the exercise of the delicate power of a court to substitute its view of constitutional limitations for the conception of the Legislature and the chief executive who approved the measure. I cannot say that the nature of the property is such as to make the five-year period unreasonable, and especially so when the step authorized thereupon is only custodial and serves the purpose of protecting the interest of the owner as well as the interest of the state.

III.
Defendants assert the State is without power to provide for either the custody or the escheat of the property here involved. They contend the State lacks sufficient contact with the transaction or property to warrant an assertion of a claim thereto. So far as this court is concerned, the issue is concluded, by the Standard Oil case as to dividends, interest on corporate obligations payable by domestic corporations, and wages payable by domestic corporations for services rendered in New Jersey. I see no difference between the alternate method and the escheat proceedings there involved insofar as this problem is concerned.
There remain for consideration two situations: (a) wages payable by a New Jersey corporation for services rendered *135 outside this state, and (b) wages earned here and payable by a foreign corporation authorized to do business in this State.
It is apparent that New Jersey is not the only state which has contact with the subject matter. The substance of defendants' position is that New Jersey's interest is not such as to exclude the authority of another state to escheat the same property and hence there looms the prospect of double escheat. In fact, New Jersey's claim ultimately to escheat wages earned elsewhere from its domestic corporations as well thus to escheat wages earned here from foreign corporations, postulates a like power in another state to escheat wages earned there from New Jersey corporations and wages earned here from corporations of that other state.
The United States Supreme Court has not yet formulated a test for determining the respective rights of several states where each has contact with the intangible and each is in a position to effect seizure by personal service of process upon the debtor within its jurisdiction. In Connecticut Mutual Life Insurance Co. v. Moore, 333 U.S. 541, 68 S.Ct. 682, 92 L.Ed. 863 (1948), it was held that New York could act with respect to proceeds of insurance policies issued by a foreign corporation for delivery in New York on lives of persons resident in New York at the time of delivery. And in the Standard Oil case, the possibility of a superior claim in another state was held not to invalidate the escheat by New Jersey. This seems necessarily to follow from the conclusion that although the debtor was entitled to the protection of the full faith and credit clause, yet another state was nonetheless free to assert its claim against the escheating state in the Federal Supreme Court. 341 U.S., at 443, 71 S.Ct. 822, 95 L.Ed. 1078.
Hence New Jersey's right to escheat does not depend upon a nice weighing of the respective contacts of this and another state. New Jersey's contact being substantial, its power to escheat the property as against defendants seems clear, albeit that in a later proceeding between contending states superiority of claim may be found in another state.
*136 Moreover, it cannot be assumed that a mere superiority of interest will carry an exclusive right to the property. The final solution may be an equitable pro-rating between or among the interested states. And further, it may be that the state which acts first will prevail. Unseemly as a race among states may be, it is not uncommon for the law to reward the vigilant and this rule may here apply even though its usual application occurs between private litigants.
Still further, the immediate question concerns the power to take custody, rather than the power to escheat. It is noteworthy that the dissenting justices of the Federal Supreme Court in the Standard Oil case were of the view that a custodial proceeding was appropriate where the interests of several states were apparent, they preferring the approach that a judgment of escheat should thereupon await a decision in the Federal Supreme Court as to the respective rights of the contending states. Hence it seems clear that the custodial step here involved is constitutionally authorized by the interest of New Jersey, whether or not its contacts are inferior to the contacts of another state. It is appropriate to add that the principle of subrogation noted in an earlier portion of this opinion, operates to support the reasonableness of our statute.
This much seems clear. Abandoned property should be taken into custody, and for that purpose an interest which might fall before the superior claim of another state should suffice to justify seizure, particularly when, for all we know, the claim of such other state may prove to be but a phantom possibility and a failure by this State to act may mean a windfall to defendant companies.

IV.
Defendants urge the State acquires no interest in abandoned property until it institutes suit for custodial judgment, and hence the statute of limitations applicable as between the owner and defendant may intervene to bar a later action by the State. Otherwise phrased, defendants say *137 the statute is not "self-executing," by which the thought is projected that the State's interest is not immediate but comes into being upon the institution of the suit. Defendants note that the State's right is wholly "derivative" of the right of the owner, which of course is true, but does not aid in ascertaining the time at which the State derives its right. Reliance is also placed upon the following passage in State v. Standard Oil Co., supra (5 N.J., at 306):
"Here, as in the case of Security Savings Bank v. California [263 U.S. 282, 44 S.Ct. 108, 68 L.Ed. 301], the statute is not self-executing. The lapse of the prescribed time does not work an immediate escheat. The turnover of the res comes only after a judicial determination of the existence of the statutory conditions. There must be proof that the owner is and has remained unknown for fourteen successive years, or that the owner's whereabouts is and has remained unknown for a like period, or that the res is and has remained unclaimed for the same period. A valid claim to the property made prior to the entry of the judgment of escheat prevents its transfer to the State."
Our Supreme Court did not mean thereby that no right of any kind existed prior to the entry of judgment of escheat under the statute there considered. In fact the issue here presented was not involved, since the statute of limitations had already barred the claims there involved prior to the effective date of the escheat statute. The court was there considering the issue of procedural due process and simply said that the title of the owner was not transferred until judgment, presumably because N.J.S. 2A:37-20, dealing with the final judgment, provided that the property "shall thereupon [that is, upon entry of judgment] escheat to the state."
It is not of decisive moment in the disposition of the issue here raised to determine when title is perfected in the State. The controlling question is whether under the statute a right of any kind accrued in the State before suit is brought. That a right does exist both under the statute considered in the Standard Oil case and under the alternate method here involved seems indisputable. It is incomprehensible that there can be suit without a preexisting right *138 to sue. It does not matter whether the right be deemed "inchoate" or described in another fashion. A right to sue to obtain custody or a right to sue to establish full title must necessarily antedate a suit to that end, whether or not title is complete prior to judgment. Since that right which is the basis upon which suit is instituted is a right of the State, there comes into play the rule that there is no statute of limitations against the State unless the Legislature expressly so provides. It follows therefore that upon the effective date of the statute, July 13, 1951, the state acquired a right in all abandoned property as to which the defendants' interest was not already secured by the statute of limitations applicable against the owner, and the right of the State continues unaffected by the passage of time notwithstanding the accrual of a bar as between the owner and defendant.
Defendants urge that if this be so, they will be required to maintain their records endlessly and will be subjected to these actions long after they would have been entitled to repose as against the owners but for the enactment of this and the first escheat statute. There is much appeal in what they say, but the appeal is solely legislative. On the other side, it may be noted that, if defendants' view should prevail, the State's interest would depend upon the elements of fortuity inherent in the prodigious task of getting these actions under way and further, repeated actions would be necessary to insure against the escape of property. At any rate, it is within the sole competence of the Legislature to fix a date upon which the State's right shall be concluded.
It is appropriate to add that in reality a defendant's predicament is not as disturbing as it would seem in abstract contemplation. A defendant could readily clear its books, as a practical matter, by the expedient of a request to the Attorney-General that an action be brought against it. In fact N.J.S. 2A:37-42 imposes a duty upon defendant to notify the Attorney-General of the existence of the escheatable property.
Nothing in Mahr v. State, 12 N.J. Super. 253 (Ch. Div. 1951), militates against the conclusion reached above. In *139 that case an interpleader action was brought against a municipality and the State for a determination of their respective rights in the property. The court held that under the first escheat statute mentioned above, the State's title could be established only in an escheat proceeding and could not be adjudged in the interpleader suit. The court did not suggest that the State was wholly without any interest until a judgment for escheat was entered.

V.
Defendants raise many other contentions which I think may be disposed of without extended discussion. The issues protected under the equal protection clause, the contract clause, and the provision of our State Constitution respecting the title of statutes are not substantial and are fully met by settled interpretations of those provisions.
Nor is there merit in the claim that the general verification of the complaint offended our then rules of court and that the situation was beyond the power to relax the rules, or that a jurisdictional failure resulted. It may be noted that R.R. 4:85-2 now deals expressly with the situation.
I see no conflict between our statute and the statutes of other states prohibiting attachment, etc., of wages or the provisions of 46 U.S.C.A. §§ 594, 596, 597, 599, 641 and 642. With respect to the provisions of 46 U.S.C.A. §§ 621 through 628, it is sufficient to say that there is no showing of a situation within section 628, and if such a situation existed and defendant had complied with the cited provisions, there obviously would remain no obligation on the part of defendant to pay wages and hence nothing subject to our statute. In re Escheat of Moneys Under Control of United States District Court, 358 Pa. 133, 57 A.2d 256 (Sup. Ct. 1948).
One of the defendants requests dismissal on the ground of de minimis non curat lex and beyond remedy on that account. It states that as a typical example its unclaimed wages for one year amounted to $527 out of a total *140 payroll of $6,795,804. It is sufficient to say that the amount is not insignificant and cannot be made so by comparison with the total wage load. The problem is essentially one calling for the exercise of discretion of the Attorney-General. The discretion is his; not the court's.
Other issues of construction and charges of fatal vagueness are, at this juncture, hypothetical. They cannot impair the validity of the provisions of the statute considered and applied in this opinion and hence cannot be deemed ripe for decision on that account. It should be added that with respect to any specific situation, there is adequate opportunity to obtain a declaration by the court as to the meaning of the terms and the judgment would explicitly chart the obligation of defendants. Any constitutional issue thought to inhere in those respects must await a set of circumstances which require the issue to be resolved.
Present judgments on notice.