30 N.J. Super. 171 (1954)
103 A.2d 634
THE TEXAS PIPE LINE COMPANY, A TEXAS CORPORATION, PLAINTIFF,
v.
WILSON A. SNELBAKER, RUTH L. SNELBAKER, TOWNSHIP OF WEST DEPTFORD AND STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 8, 1954.
*172 Mr. Howard G. Kulp, Jr. (Messrs. Brown, Connery, Kulp & Wille, attorneys), for the defendants.
Mr. Frederick P. Greiner and Mr. James Hunter, III (Messrs. Archer, Greiner, Hunter & Reed, attorneys), for the plaintiff.
*173 WOODS, J.S.C.
The defendants in this suit attack the plaintiff on two grounds:
First: They claim that the plaintiff has no statutory authority under the laws of this State to exercise the right of eminent domain.
Second: The statute on which the plaintiff relies for its authority, if so construed and accepted, is in violation of rights reserved under paragraph 20, Article I, of the New Jersey Constitution and under the Fourteenth Amendment of the Constitution of the United States.
Motions were addressed to the court and determined. The proceedings, on order of the court, came on for trial in a plenary manner, without a jury, agreeable to N.J.S.A. 20:1-2, effective July 1, 1953. Pleadings and procedure are summarized in defendants' and plaintiff's briefs.
The plaintiff is a corporation organized and existing under the laws of the State of Texas and by certificate issued October 14, 1952 is duly authorized to do business in the State of New Jersey. The character of business which said corporation is to transact in this State is that of "common carrier by pipe line engaged in transportation of petroleum products and other business more fully described in attached Certificate of Incorporation and amendments thereto." (Exhibit P-1)
By these proceedings the plaintiff seeks to acquire certain rights in lands of the defendants for the construction and operation of a pipe line for the transportation of petroleum products. Plaintiff cites R.S. 48:10-1 as its source of authority to acquire the lands necessary to carry out its purposes by eminent domain. The statute reads as follows:
"Pipe line companies, associations and corporations may acquire by condemnation land and other property necessary for public use for right of way in the manner prescribed by chapter 1 of the title Eminent Domain (§ 20:1-1 et seq.)."
As aforesaid, defendants assail the constitutionality of the statute as applied to this case and allege that the right of eminent domain cannot be delegated to a foreign corporation.
*174 It is a fundamental principle of law that the power to appropriate private property for public use is an attribute of sovereignty which is guarded by the Federal and State Constitutions. The Legislature may exercise the power to delegate this right to another, provided there is a public use, a public necessity that the property be taken; a provision for the payment of just compensation to the owner and that due process of law is afforded him. All of these provisions have been met in general in the statute. It cannot be considered "vague, indefinite and uncertain."
"In the absence of a constitutional inhibition, the legislature may authorize a foreign corporation to condemn lands in the state." 29 C.J.S., Eminent Domain, § 25 a, note 44, p. 814. And "the right of a foreign corporation to exercise the power of eminent domain may be gathered by implication. It may be conferred by statutes * * * permitting them to take and hold real estate." 29 C.J.S., Eminent Domain, § 25 c, p. 815. It was also stated by Judge Colie in Faubel v. Buckeye Pipe Line Co., 29 N.J. Super. 116, 119 (Law Div. 1952):
"The defendant, a foreign corporation, has, by virtue of R.S. 48:10-1 the power of condemnation. * * * In Allen v. Francisco Sugar Co., 92 N.J. Eq. 431 (E. & A. 1921) a statute empowering a domestic corporation to lease its property to `any corporation' was held to bestow the right to lease to either domestic or foreign corporations. More recently, in Mechanics Finance Co. v. Austin, 8 N.J. 577 (1952) the language `any person, agent, treasurer, or other fiduciary officer of a private or public municipal corporation' was held applicable to the named agents of a domestic or a foreign corporation alike. By parity of reasoning, it seems clear that R.S. 48:10-1 grants the power of condemnation to the defendant. Cf. Groel v. United Electric Co., 69 N.J. Eq. 397 (Ch. 1905) and Middlesex Pipe Line Co. v. Libbrun Holding Co., 128 N.J. Eq. 123 (Ch. 1940)."
We conclude that under the statute R.S. 48:10-1 a foreign corporation does have the right to acquire lands by condemnation.
Defendants further allege that the plaintiff is seeking to acquire a right of way over their land for a private purpose *175 and not for a public use; that if there is a public use, it does not exist for the citizens of New Jersey and no public benefit can accrue to them.
It would appear from the pleadings, depositions, testimony, exhibits and briefs of counsel that the rights in the lands herein sought to be acquired are to be used in constructing a pipe line system known as "The Harbor Products System," extending from Woodbury Junction to Tremley and feeder lines to Woodbury Junction from Gulf, Sinclair and Texas refineries in the Philadelphia area. From Tremley lines will go to the Gulf, Sinclair and Texas distribution terminals and another line will connect with the Buckeye System for transshipment to Pennsylvania and upper New York State. The Harbor Products System is the title given to a project of the Texas Pipe Line Company, Gulf Refining Company and Sinclair Pipe Line Company as evidenced by an agreement entered into on July 1, 1952 (Exhibit P-5). Said agreement, with particular reference to the use of the line provides as follows:
"VI Operating Procedure
B. 1: * * * Subject to unanticipated obligations which may arise out of a party's duties as common carrier, individual shipper's schedules may be changed during the current month if changes can be synchronized with other shipper's schedules.

* * * * * * * *
D. Operation as Individual Common Carriers.
The system shall be operated by the respective parties as individual common carrier facilities. Each party shall separately publish and file tariffs in its own name in accordance with all state and Federal laws and regulations covering such party's capacity in the system. Sinclair shall not be agent for any of the other parties to this Agreement in connection with acceptance of petroleum products and tenders from shippers, it being understood that such party as to its capacity in the system is the carrier, and not Sinclair. Each party shall collect for its own account all revenues and sums under its tariff through its capacity in the system."
It is true that the right-of-way sought over the lands of the defendant is not a part of the main pipe line system covered by this agreement. It is a part of the feeder line from Eagles Point Refinery of the Texas Company to the *176 Woodbury Junction terminal of the Harbor Products System. However, for the purposes of this suit, it must be considered as a part of the whole plan. To determine otherwise would be meaningless.
That the plaintiff is a pipe line company and a common carrier cannot be denied. As such it is charged with the duty of transporting oil and other related products between given points. It is true that the pipe line project will be maintained and operated for the use of the plaintiff corporation generally, but it is equally true from the evidence before this court that the pipe line system will be open for public use as the need arises. In the deposition of the assistant general manager of the Texas Pipe Line Company, we find that this company has built pipe line systems in several states and that presently the products of about 50 shippers are at times carried. He further stated that in the beginning of these projects there were not a large number of shippers, but "It has been our experience after a transportation channel is built, other shippers will seek to use it and do."
We must keep in mind in determining what is to be considered a public use the increasing wants of society as our economy and public welfare continue to develop and progress. Furthermore, even if there is no public use in the property taken, if there is a public benefit derived from the service rendered, free from unreasonable discrimination, we must consider the taking constitutional.
One of the earliest cases in New Jersey on eminent domain is that of Scudder v. Trenton Delaware Falls Co., 1 N.J. Eq. 694 (Ch. 1832). To some extent the facts are analogous to these in this case and the principles of law set forth in the opinion of the Chancellor are so broad as to encompass the question of the constitutionality of the statute involved here and the rights of the plaintiff to acquire a right-of-way for the pipe line by condemnation. In the Scudder case a private company was incorporated to create water power for manufacturing purposes. We quote from the Chancellor's opinion:
"It appears from the case made, that the proceedings of the defendants are sought to be justified under the act of incorporation *177 already mentioned, giving them authority to create a water power * * *. The complaint is * * * that the act of incorporation, though emanating from the legislative authority of the state, confers no power to take the complainant's property in any way, and for the uses in which it is designed or attempted to be taken; that it is unconstitutional, and therefore void.
It was also alleged `that the land is sought to be taken, not to answer any state necessity, nor for the benefit of the community at large, nor for any public use whatever, but solely for the private gain and emolument of the said company. * * *' This presents a grave and interesting subject for inquiry. It strikes at the constitutionality of the law, not merely in relation to its details, and minor provisions, but its very nature and objects; and if the blow be well aimed, it is utter destruction. * * * This right (the right of the state to take private property for public use) was originally founded on state necessity. If its exercise had been confined to this limit, there could be no doubt as to this case; for it will not be pretended that the enjoyment of the complainant's property is called for by any necessity of the state, or that it is to be appropriated in that way. In process of time the right has been more liberally construed. The term public use, is, under the decisions of our courts, an unsettled question. It is not limited to the actual use and occupation of the property by the State; for private property is taken in many instances, when the state, in its sovereign capacity, does not and cannot occupy it. It is not limited to public political corporations; for the right of private corporations, to take private property for a variety of purposes, such as the construction of canals, turnpike roads, etc., is not disputed at this day. Nor is it limited to private corporations whose sole object it is, to promote the public good. Such corporations are not to be found. Private interest or emolument, is the premium mobile in all. The public interest is secondary and consequential. Where then shall the line be drawn by this court? * * * It is contended, however, that the present case is going a step further than has yet been done. Turnpike roads have been considered as public, or as appropriated to public uses, because every one has a right to travel them on paying the regular toll. Railroads have been considered public, because they facilitate the conveyance of passengers and the transportation of merchandize, and thereby benefit the community; whereas the object of the present franchise is to create a water power, and erect thereon extensive manufacturing establishments. These will be under the control of individuals. The company may either build or lease. * * * And they are under no obligation to let the public participate in the immediate profits of their undertaking. If to establish this as a public benefit, it be indispensably necessary that the public should have the privilege of participating in it directly and immediately, then the proposition is not made out, and the defendants have no authority. But is not this view too narrow? Can public improvements be limited within such a compass? May we not, in considering what shall be deemed a public use and benefit, look at the objects, the purposes, and the results of the undertaking. *178 * * * The varying condition of society is constantly presenting new objects of public importance and utility; and what shall be considered a public use or benefit, may depend somewhat on the situation and wants of the community for the time being. The great principle remains. There must be a public use or benefit; that is undisputable; but what that shall consist of, or how extensive it shall be to authorize an appropriation of private property, is not easily reducible to general rule. * * * The legislature have thought proper, in their wisdom, to exercise the right of eminent domain for an object, which they deem of public use and importance; and although their judgment is not conclusive as to the right, it is certainly entitled to a most respectful consideration. They have authorized a company to do what the state itself might have done without having their right questioned. They have in this pursued the ordinary mode. All great improvements in our state, are made through private incorporated companies, and perhaps better accomplished in that way than any other. The mere mode of making them, forms no objection in itself to their constitutionality; courts will look at the object and judge from that." (Italics ours.)
In adopting R.S. 48:10-1 it is evident that the Legislature deemed the purpose of a pipe line important enough that the development of the enterprise should not be prevented by the unwillingness of a private owner to sell his property for a fair price, and even though there may be no public use, in the common meaning of that phrase, there will be a public benefit from the service rendered.
"In order that a use may be public, it is not essential that the whole community should be able directly to participate in it. * * * But it is essential that the utility should in a substantial measure concern the public." Albright v. Sussex County Lake and Park Commission, 71 N.J.L. 303, 57 A. 398 (E. & A. 1904).
Said Vice-Chancellor Stein in Middlesex Pipe Line Co. c. Libbrun Holding Co., 128 N.J. Eq. 123, 15 A.2d 328 (Ch. 1940):
"The Legislature both in R.S. 48:2-13 and R.S. 48:10-1, N.J.S.A. 48:2-13 and 48:10-1, recognized the existence of pipe line corporations and their lawful purpose. It is concluded that complainant possesses the right to condemn land under R.S. 48:10-1 for public use for right of way. To hold otherwise is to say that the statute is a mere futility  a meaningless and empty thing. The purpose of the statute is clearly expressed and its operation should be made effective."
*179 Our conclusions are: (1) that the plaintiff has statutory authority under the laws of this State to exercise the right of eminent domain, and (2) that the statute authority is not in violation of the rights reserved under paragraph 20, Article I, of the New Jersey Constitution and under the Fourteenth Amendment of the Constitution of the United States.
Permanent restraint is denied.