114 N.J. Super. 1 (1971)
274 A.2d 626
COMMONWEALTH OF PENNSYLVANIA, PLAINTIFF,
v.
JOHN A. KERVICK, STATE TREASURER OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided March 1, 1971.
*5 Mr. Howard R. Yocum for plaintiff. (Messrs. Yocum and Yocum, attorneys).
Mr. George F. Kugler, Jr., Attorney General of New Jersey for defendant. (Mr. Robert W. Dempsey, Deputy Attorney General, of counsel).
*6 WICK, J.S.C.
Pennsylvania is suing for payment of monies held by the State Treasurer of New Jersey under the Custodial Escheat Act (N.J.S.A. 2A:37-29 to 44, inclusive; approved July 13, 1951). Defendant's counterclaim seeks discovery of the identity of all persons who have a claim to abandoned property now held or escheated to Pennsylvania where, according to the records of the various obligors, the last known address of such owners was in New Jersey. Defendant also wants protective custody or a judgment of escheat for abandoned property now in possession of plaintiff.
The facts are undisputed and the case was submitted on briefs. During the 1950's the New Jersey Attorney General began four suits against U.S. Steel Corp. for delivery and custody of personal property unclaimed for five years and still held by the corporate debtor. The docket numbers of these suits were C-1137-52, C-669-53, C-268-55 and C-2553-58.
In compliance with N.J.S.A. 2A:37-30, 31, judgments for custody were entered and the corporation delivered the monies representing unclaimed debts, along with a list of the last known address of the record owners "to the state treasurer for safekeeping." In these cases the State did not proceed under N.J.S.A. 2A:37-11 to 28, inclusive (the Absolute Escheat Act for personal property generally), but under N.J.S.A. 2A:37-29 to 44, inclusive (the Custodial Escheat Act, an alternate method).
After receiving these funds the State Treasurer mailed notices to the persons listed and to the attorney general of the state designated by the last known address. N.J.S.A. 2A:37-32 specifies that the notice to last known owners requires a written claim to be made within two years from date of notice or else "an action will be instituted to escheat such moneys to the state in conformity with this article." The notice to attorneys general ouside of New Jersey advised them to "present any claim that such state might have to such money."
*7 In 1966 Pennsylvania sought a consent judgment from U.S. Steel Corp. to escheat the monies due to persons having last known addresses in Pennsylvania. The judgment relieved the corporation from any obligation to pay over any monies. It was apparently recognized that under N.J.S.A. 2A:37-33 payment by the corporation to the State Treasurer of New Jersey released the corporation from "any and all claims * * * by any person whatsoever," and that the obligation to pay any claims became the obligation of New Jersey.
On October 26, 1966 a letter from the Secretary of Revenue of the Commonwealth of Pennsylvania requested New Jersey to pay over monies held in custody and due to creditors having the last known address in Pennsylvania. The amount claimed was $186,541.76 but presently would be reduced by any payments made to the actual creditors with a last known Pennsylvania address. On October 1, 1968 the New Jersey Attorney General on behalf of the State Treasurer refused the claim. On May 26, 1969 this action was filed according to N.J.S.A. 2A:37-32 (L. 1951, c. 304) as it read before amendment on June 28, 1967 (L. 1967, c. 135).
Plaintiff's position is that the Custodial Escheat Act or the rule of Texas v. New Jersey, 379 U.S. 674, 85 S.Ct. 626, 13 L.Ed.2d 596 (1965), entitles the Commonwealth to the monies held in custody by New Jersey.
Defendant raises several defenses and arguments in his answer and brief:
1. This court has no jurisdiction because the United States Supreme Court has original jurisdiction.
2. Plaintiff did not make timely appeal from the administrative decision by the State Treasurer.
3. The statute of limitations, laches and estoppel are proper defenses.
4. The Pennsylvania judgment against U.S. Steel Corp. was not binding on New Jersey.
5. Texas v. New Jersey should not be applied retroactively.
6. The Constitutionality of the 1967 amendments to the Custodial Escheat Law need not be decided.

*8 7. Conflicts of law must be determined.
8. The amount claimed by plaintiff is disputed.
These arguments will be discussed in relation to the court's resolution of the legal issues.
Escheat in New Jersey derives from the right of sovereignty of the State "as the original and ultimate proprietor" of all property within its jurisdiction. The purpose of all escheat laws is not only to enrich the State but to put into active use funds that are unclaimed and lying dormant. Yet, escheat statutes should be distinguished from custodial statutes which make the State a custodian of the abandoned property, subject to delivery to those who prove ownership or a right to possession. The Custodial Escheat Act of 1951 amended the prior Absolute Escheat Act of 1946 to add an alternate method of escheat, using an intermediate custodial procedure.
The purpose of the custodial provisions was to avoid losing property that the State could not escheat under the prior statute because of the six-year statute of limitations. (See State v. Standard Oil Co., 5 N.J. 281 (1950), where the State sought to escheat funds representing unpaid obligations of a corporation unclaimed for 14 years and the statute had run barring the creditors' claims to most of the funds.) Though the Custodial Escheat Act directly supplemented and "rounded out the existing escheat law so as to create a general plan of escheat," State v. National Newark & Essex Banking Co., 31 N.J. Super. 246, 250 (Ch. Div. 1954), the custody provisions are more frequently applied because the State can ultimately own the funds sooner than under the 14-year provisions of N.J.S.A. 2A:37-13.
To understand the operation of the New Jersey escheat laws and the Custodial Escheat Act in particular, the developing case law will be reviewed. This is important because it relates to the status of the funds presently held by New Jersey and claimed by Pennsylvania.
In State v. Standard Oil Co., 5 N.J. 281 (1950), aff'd 341 U.S. 428, 71 S.Ct. 822, 95 L.Ed. 1078 (1951), the *9 court in dictum described the operation of the Absolute Escheat Act as not "self-executing. The lapse of the prescribed time did not work an immediate escheat. The turnover of the res comes only after a judicial determination of the existence of the statutory conditions." (5 N.J. at 306) Because of this "A valid claim to the property made prior to the entry of the judgment of escheat prevents its transfer to the State." (5 N.J. at 307).
The Custodial Escheat Act incorporated these suggestions by providing a separate procedure for intangible property such as dividends, interest or wages due. Now the State could acquire protective custody of funds unclaimed for five years, after which those funds not claimed within two years while in the possession of the State could be escheated after the Attorney General brings a summary action in the Superior Court under N.J.S.A. 2A:37-36. The language of the provision and subsequent cases indicates that this provision is mandatory for escheat. The amendments of June 28, 1967 did not change the wording that the Attorney General "shall thereupon bring * * * a summary action * * * for the escheat of the said moneys to the State * * *."
Here New Jersey did not follow the steps required by the statute to perfect its right to escheat. It has obtained no "judgment `declaring that the property * * * has escheated to the State.'" Mahr v. State, 12 N.J. Super. 253, 257 (Ch. 1951), which pointed out that the State's title to monies must be established by an escheat judgment and not by interpleader.
In State v. American-Hawaiian Steamship Co., 29 N.J. Super. 116 (Ch. Div. 1953), the court made it clear that after a custodial judgment the State must take further action to escheat:
The State may, but need not, initiate proceedings under this [alternate] method, but if it does, it must pursue the method to a conclusion, including the institution and prosecution of a final action for escheat. [at 126]
*10 Our courts have repeatedly recognized the distinction between the two alternate methods of escheating personal property. While the custodial provisions did not limit the scope of the original escheat statute, the custodial provisions were not designed to convert to an absolute escheat by merely initiating a custody proceeding. State v. American Sugar Refining Co., 20 N.J. 286, 292 (1956). So, before the escheat judgment "the State has no title, but a mere possibility of interest." State v. United States Steel Corp., 22 N.J. 341, 365 (1956) (dissent by Justice Heher).
In construing various provisions of the Custodial Escheat Act our Supreme Court rejected the view that the act was a penalty and to be construed narrowly. Instead the act has the remedial effect of increasing the period during which claims may be asserted by unknown owners or claimants without being barred by the statute of limitations which would apply if the corporate debtor kept custody. The act provides for a transfer of this custody to the State. State v. Sperry & Hutchinson Co., 23 N.J. 38, 44 (1956). This is all that has been done in the present case:
Under the act, custody of the unclaimed dividends, not title to them, is transferred to the State Treasurer at the order of the Superior Court after the five-year period. But title does not pass until at least two more years have elapsed without claim by the true owner in which event a judgment of escheat may be entered. And even upon entry of an escheat judgment, at any time within seven additional years thereafter, the proceedings may be reopened and the stockholder's share, plus interest thereon, ordered released to him, if he did not have actual knowledge of the escheat action. [State v. Jefferson Lake Sulphur Co., 36 N.J. 577, 585 (1962)]
Since the court finds that New Jersey is presently holding in custody escheatable funds and that New Jersey has not prosecuted for a judgment of escheat, the question of whether Pennsylvania can claim these funds for escheat to itself will be considered.
Defendant claims that this court does not have jurisdiction to determine who has a right to the funds in question. He *11 argues that this suit is a controversy between two states which are claiming the right to escheat the same funds. Because of the nature of the controversy this suit should properly be heard by the United States Supreme Court under Massachusetts v. Missouri, 308 U.S. 1, 60 S.Ct. 39, 84 L.Ed. 3 (1939).
Those principles do not apply here. Pennsylvania has voluntarily submitted itself to the jurisdiction of the New Jersey courts, and to the extent of this submission Pennsylvania will be bound by the judgment of this court. This is unlike Massachusetts v. Missouri where it was argued that two states claimed the exclusive right to impose inheritance taxes on trust estates. The court rejected this and found no controversy between the two states because it was not shown that their tax claims were mutually exclusive. Rather, "each claim is wholly independent of that of the other and * * * may constitutionally be pressed by each state without conflict in point of fact or law with the decision of the other." (308 U.S. at 15, 16, 60 S.Ct. at 42). The court distinguished the situation where under the law of several states only one tax could be imposed on the particular estate. Thus, the court found that Massachusetts would have a proper remedy because the Missouri courts would still be open for a suit by Massachusetts to recover taxes alleged to be due from the trust estate. Plaintiff did not show that other state courts would not be open to it.
Our own Supreme Court recognized the jurisdiction of the Superior Court in custodial actions in which another state has a claim to the same funds: "Personal jurisdiction was present because there was due service of process on the defendant [corporation] and jurisdiction of subject matter was present because the court had power to determine cases of the class to which the action belonged." State v. American Can Co., 42 N.J. 32, 37-38 (1964), cert. den. 379 U.S. 826, 85 S.Ct. 53, 13 L.Ed.2d 36 (1964). Moreover, "Our statute in fact recognizes that the interest of other states, if superior to ours, will be acknowledged, and this is implicit *12 in the provisions of N.J.S.A. 2A:37-32 and 37, N.J.S.A., for notice to the Attorney General of the state where unknown or missing owner had his last known address." State v. American-Hawaiian Steamship Co., above, 29 N.J. Super., at 133.
Although the New Jersey courts are open to Pennsylvania to present claims or enforce rights "which are neither penal in nature nor offensive to our policy," this court has no power to require Pennsylvania to turn over any funds against which New Jersey may have a claim because the last known address of the creditor was here. Pennhurst State School v. Estate of Goodhartz, 42 N.J. 266, 271 (1964). The courts of Pennsylvania are open to New Jersey to present any claims it might have.
Ordinarily a nonresident plaintiff who voluntarily sues in New Jersey courts cannot avoid related counterclaims in the same suit. The Commonwealth of Pennsylvania has submitted to this court's jurisdiction for the specific purpose of presenting a claim under the Custodial Escheat Act. Korff v. G. & G. Corp., 21 N.J. 558, 572 (1956). The vague and broad counterclaim seeking discovery of possible claims against escheatable property which Pennsylvania may have should be brought in the Pennsylvania courts.
Defendant further argues that plaintiff's claim was refused by the State Treasurer and that it should have appealed to the Appellate Division under R. 2:2-3 within the time provisions of R. 2:4-1(b). This argument assumes that L. 1967, c. 135, effective June 28, 1967, which amended and repealed several provisions of the Custodial Escheat Act of 1951, applied to plaintiff's claim to the State Treasurer in 1966 and refused in 1968. Without considering in detail plaintiff's arguments against this defense, the court concludes that this claim was properly presented under the 1951 provisions. Because of this the constitutionality of the 1967 amendments substituting an administrative procedure for taking custody and presenting claims need not be decided; other grounds to resolve the issues before the court exist. *13 Note, however, N.J.S.A. 2A:37-44, as amended by L. 1967, c. 135, which describes the effect of the amendments on proceedings already commenced. None of the proceedings described in that section is pending: New Jersey already has custody of the funds in question for safekeeping; no proceeding to escheat these funds has been commenced by New Jersey. Pennsylvania's claim was made prior to these amendments, and the former provisions of the Custodial Escheat Act apply:
The ordinary rule of construction is that a procedural statute is to be construed prospectively unless the legislative intent clearly indicates that a retrospective operation is intended * * *. Pending cases are only affected by general words as to future proceedings from the point reached when the new law becomes operative. [State v. United States Steel Corp., 12 N.J. 38, 43 (1953)]
In State v. United States Steel Corp. the trial judge fixed a hearing for September 7, 1951 to consider an escheat under the 1946 Absolute Escheat Act. The court's order in June required five days' notice before the hearing for anyone filing a claim to the funds. An amendment to the statute, effective July 13, 1951, allowed two more days in which to file claims. The court was therefore faced with the question of whether the prior statute of 1946 or the amendment of 1951 requiring claims to be filed not later than three days before the hearing applied to an escheat action begun in 1948. The court rejected the argument that the 1951 amendment was effective when notice was to be given in September. The entire court agreed that the June order was governed by the 1946 statute.
Plaintiff in the present case further substantiates its claim to the funds held by defendant by relying on Texas v. New Jersey, above, where the court held that unclaimed obligations owed by a corporation are subject to escheat only by the state of the creditor's last known address as shown by the corporate records. Defendant argues that to apply this rule to the present case is to give it retroactive application for which there is no basis, since New Jersey took custody of *14 the funds in the 1950's and the rule in Texas v. New Jersey, decided on February 1, 1965, should not apply to monies already received under a custody judgment. Plaintiff argues that no question of retroactivity is involved here because the status of the monies delivered to defendant for safekeeping has continued up to the present. This status was the same before and after the rule in Texas v. New Jersey. These arguments will be considered in turn.
In selecting the test by which to determine the state with the primary right to escheat, the court chose a rule that was uniform, easy to administer, and which promoted an equitable distribution of the personalty among the states in proportion to the commercial activity of their residents. 379 U.S. at 681, 85 S.Ct. 626. To give the state of domicile of the debtor corporation the right to escheat would have exalted "a minor factor to permit escheat of obligations incurred all over the country by the State in which the debtor happened to incorporate himself." 379 U.S. at 680, 85 S.Ct. at 630. (See State v. American Sugar Refining Co., above, for the prior New Jersey view analyzing the State's contact with the property.)
Under this last known address rule only a factual question has to be determined and the merits of the individual claims need not be argued, including residence, domicile, or most significant contacts. But the rule does not apply when the state of the last known address does not have an escheat procedure or where the corporation has no record of any address. In that situation the state of the debtor's domicile could keep the funds for its own use only until another state could show a superior right to escheat. Thus, under this rule the Supreme Court saved itself from numerous original jurisdiction suits to determine a question of fact. Since any state attempting to thwart the rule would be inviting litigation, it is in the best interests of New Jersey to adhere to this rule formulated by the Supreme Court.
The rule has to be criticized because the state of the last known address may not have contacts with the debtor *15 corporation to compel reporting of escheatable property or to seize the property by service of notice to the debtor. Yet, if a claimant state lacks jurisdiction over the debtor corporation, it can resort to a sister state court to enforce its claim. In the present case Pennsylvania had jurisdiction over U.S. Steel Corp., and the escheat proceeding was against the corporation and merely established Pennsylvania's right to escheat the monies of those claimants living in Pennsylvania. That suit was not against New Jersey, and the defendants' argument that the Pennsylvania judgment is not binding on New Jersey because New Jersey could not have been made a party is without merit.
Throughout defendant's brief the reliance of the State of New Jersey on prior law in taking custody of escheatable property is stressed as a reason for denying retroactive application of Texas v. New Jersey and for finding that the plaintiff is guilty of laches by not presenting a claim to New Jersey until after that case was decided. Certainly, the degree to which a prior rule may have been justifiably relied upon is a factor to be considered when a judicially changed rule is asserted to have retroactive application. But the Supreme Court has pointed out that the element of reliance is not persuasive where an overruled case had been under attack from its inception. Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1970).
New Jersey decisions have held that the possibility that an earlier decision would be changed should have been within the reasonable contemplation of the party who had allegedly relied on it. See e.g. Dalton v. St. Luke's Catholic Church, 27 N.J. 22 (1958); Wangler v. Harvey, 41 N.J. 277 (1963). Even the cases cited by defendant to show reliance on prior law give indications that this reliance was not justified in view of the unsettled questions which Texas v. New Jersey resolved. In Standard Oil Co. v. New Jersey, 341 U.S. 428, 71 S.Ct. 822, 95 L.Ed. 1078 (1951), even the majority opinion warned that "The claim of no other state to this property is before us and * * * determination *16 of any right of a claimant state against New Jersey for the property escheated by New Jersey must await presentation here." 341 U.S. at 443, 71 S.Ct. at 831. The dissent in that case suggested that the states enact custodial statutes to hold abandoned property as trustee until subsequent determination of "what State has the controlling interest justifying escheat." 341 U.S. at 444, 71 S.Ct. at 831. This suggestion was followed by New Jersey when the Custodial Escheat Act was enacted. See also, State v. American-Hawaiian Steamship Co., above 29 N.J. Super. at 135.
Again in 1961 the Supreme Court avoided the adjudication of multiple state claims but adopted the policy that no state's claim would be recognized unless actively pursued before the court. Western Union Telegraph Co. v. Pennsylvania, 368 U.S. 71, 82 S.Ct. 199, 7 L.Ed.2d 139 (1961). The court was concerned with the problem of subjecting the debtor corporation to multiple liability when more than one state attempted to escheat the same funds. The court held that an escheat statute which cannot protect a debtor from liability to other states denied the debtor due process of law:
This makes it imperative that controversies between different States over their right to escheat intangibles be settled in a forum where all the States that want to do so can present their claims for consideration and final authoritative determination. Our Court has jurisdiction to do that. [at 79, 82 S.Ct. at 203]
In State v. American Can Co., above, the trial court was aware in 1961 that Western Union was pending, but noted that under the Pennsylvania statute absolute escheat was being sought while the case before it involving a claim by California was brought under the custodial provisions. The trial court indicated that those provisions were intended to furnish absolute protection against double liability by the debtor corporation. 42 N.J. at 35. Thus, the court found that the decision in Western Union did not effect the validity of the custody judgments, but cautioned that the United States Supreme Court still had to resolve the question of which *17 state has the right to escheat. 42 N.J. at 38. These considerations lead the court to conclude that the reliance argument underlying defendant's defenses of laches, estoppel or nonretroactive application of Texas v. New Jersey are without merit.
One further case should be noted because its rationale questions the propriety of the defendant's position. In State v. Amsted Industries, 48 N.J. 544 (1967), the State of New Jersey brought an action to obtain custody of unclaimed monies held by Amsted Industries. "Thereafter the Supreme Court rendered its decision in State of Texas v. State of New Jersey * * *." Amsted argued in the Chancery Division that New Jersey could not escheat claims of persons having a last known address in other states with escheat laws, even though Amsted was not authorized to do business in some of these states. The trial court and the New Jersey Supreme Court agreed with Amsted.
The court reviewed the state of the law after Texas v. New Jersey and the restrictive view advanced by the state. Our court stressed a policy of honoring claims of other states under the Texas v. New Jersey rule by asserting that New Jersey courts would entertain actions on such claims. Neither brief mentioned this unanimous decision. It was handed down before defendant rejected the claim of Pennsylvania. A reading of that opinion may have avoided the acrimony of the present suit.
Without further discussion the court sees no valid conflicts of law issue before it. The rule of Texas v. New Jersey is binding on all states, and any state rule to the contrary is invalid.
As to the principal amount due to plaintiff, the court sees no problem in determining it once the amounts due to those creditors with a Pennsylvania last known address are totaled and still remain unpaid to the original creditor.
Finally, the court finds that no interest should be paid by defendant on those funds due to plaintiff. Although this decision is within the discretion of the court, law exists *18 to support it. See State v. Atlantic City Electric Co., 23 N.J. 259, at 266 (1957), where the court discussed the question of whether a holder of funds was a trustee or debtor where interest is paid on the funds held. The reasoning applies here: a fiduciary usually does not obligate himself to pay interest on funds held for the benefit of others. Here defendant has custody of funds for safekeeping and this fiduciary status leads the court to believe that no interest should be paid on the funds so held. Furthermore, N.J.S.A. 2A:37-40, before being repealed by L. 1967, c. 135, allowed interest on claims by persons having no actual knowledge of the escheat judgment. Since New Jersey has sought no escheat judgment, that provision should not apply here to the claim of the Commonwealth of Pennsylvania. See N.J.S.A. 2A:37-41 as amended in 1967, allowing the state to retain any interest received from money held in a special trust fund for later claims.
Judgment for the plaintiff in accordance with this opinion.