STATE OF NEW JERSEY, BY DAVID D. FURMAN, AT-
TORNEY GENERAL OF THE STATE OF NEW JERSEY,
PLAINTIFF-APPELLANT, v. AMSTED INDUSTRIES,
FORMERLY KNOWN AS AMERICAN STEEL FOUND-
RIES, ETC., DEFENDANT-RESPONDENT.

Argued January 23, 1967—Decided February 20, 1967.

Mr. Alan B. Handler, First Assistant Attorney General, argued the cause for appellant (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney; Mr. Charles J. Kehoe, Deputy Attorney General, of counsel; Mr. William J. Walsh, Deputy Attorney General, on the brief).

Mr. Arthur C. Dwyer argued the cause for respondent (Messrs. Stryker, Tams & Dill, attorneys).

The opinion of the court was delivered by

JACOBS, J. The plaintiff State of New Jersey filed its action under the Custodial Escheat Law (*N. J. S.* 2A:37–29 *et seq.*) for the custody of unclaimed dividends, wages and other monies held by the defendant Amsted Industries, a New Jersey corporation formerly known as American Steel Foundries, etc. Thereafter the Supreme Court rendered its decision in *State of Texas v. State of New Jersey,* 379 *U. S.* 674, 85 *S. Ct.* 626, 13 *L. Ed. 2d* 596 (1965), and under it there was no longer any dispute as to most of the issues. Admittedly, New Jersey could take custody here of any claim payable to a person whose last known address was in New Jersey or who had no recorded last known address; it could also take custody of any claim payable to a person whose last known address was in a state which had not made provision for escheat of such claim. In the Chancery Division, the defendant took the position that New Jersey could not take custody of any claims payable to persons with last known addresses in states which had made provision for escheat of such claims, but the plaintiff contended that this was so only as to those states where the defendant was authorized to do business and was thereby subject to service of process. This contention was rejected by the Chancery Division which entered a judgment providing, in part, that New Jersey could not escheat the claims of persons whose last known addresses on the records of the defendant were in Florida, Kentucky, Massachusetts, New York and Virginia, states with escheat laws but where the defendant was not authorized to do business. The plaintiff appealed to the Appellate Division from this part of the judgment and we certified before argument there.

The history of New Jersey's escheat laws and their treatment in the courts appear sufficiently from the reported decisions and need not be outlined here. See *State by Parsons v. Standard Oil Co.,* 5 *N. J.* 281, 297 (1950), affirmed *sub. nom. Standard Oil Co. v. New Jersey,* 341 *U. S.* 428, 95 *L. Ed.* 1078 (1951); *State by Van Riper v. American Sugar*

*Refining Co.,* 20 *N. J.* 286 (1956); *State by Hilgendorff v. American Can Co.,* 42 *N. J.* 32, 37, *certiorari* denied 379 *U. S.* 826, 85 *S. Ct.* 53, 13 *L. Ed.* 2d 36 (1964); *State of Texas v. State of New Jersey, supra,* 379 *U. S.* 674, 85 *S. Ct.* 626, 13 *L. Ed.* 2d 596. *In State by Van Riper v. American Sugar Refining Co., supra,* a New Jersey corporation held unclaimed dividends of stockholders whose last known addresses were in Massachusetts. The State of New Jersey filed an escheat proceeding and Massachusetts entered an appearance, claiming that its right to escheat as the state of the last known addresses was paramount to that of New Jersey as the state of incorporation. We rejected the claim of Massachusetts but since it sought no further review, the matter did not then come before the Supreme Court.

Some years later in *State of Texas v. State of New Jersey, supra,* the State of Texas filed an original proceeding in the Supreme Court against the States of New Jersey and Pennsylvania and the Sun Oil Corporation, for a declaration as to which state could properly escheat debts owed by the corporation but unclaimed for many years. New Jersey was the state of incorporation, Pennsylvania was the state where the principal place of business was located, and Texas, asserting that it had the most significant contacts, was the place where all of the debts were recorded in offices maintained by the corporation and where many of the last known addresses were located. Florida intervened as a state of last known addresses.

There was no question that some state should have the right to escheat unclaimed property but there was equally no question that only one state should have that right. The problem was the selection of the proper state. The Supreme Court acknowledged that the situation was not controlled by precedent or logic or by any statutory or constitutional provision. It viewed the matter as "fundamentally a question of ease of administration and of equity" (379 *U. S.,* at *p.* 683, 13 *L. Ed.* 2d, at *p.* 602) and, on that approach, it concluded that the creditor's state, as evidenced by his recorded last

known address, should be the escheating state. However, if that state has made no provision for escheat then the state of incorporation may escheat, subject to the right of the creditor's state to recover if it later makes provision for escheat. Similarly, if there is no recorded last known address then the state of incorporation may escheat, subject to the right of the creditor's state to recover if proof later appears that the last known address was within its borders. 379 *U. S.,* at *p.* 682, 85 *S. Ct.* 626, 13 *L. Ed. 2d,* at *pp.* 601–602.

We find nothing in the Supreme Court's opinion in *Texas* which lends any support to New Jersey's contention that the creditor's state supplants the state of incorporation only if the defendant has been authorized to do business there. Nor do we find any reason in policy or otherwise for such restriction. Under *Texas* the creditor's state now has the paramount interest and other states should do what they can to honor it. See 65 *Colum. L. Rev.* 1101, 1104 (1965). The mere fact that the defendant has not formally qualified to do business in the states in question does not necessarily mean that it is immune from their jurisdiction and service of process. Its actual activities within those states may well bring it within the currently expanding concepts and exercises of jurisdictional power. See *International Shoe Co. v. State of Washington,* 326 *U. S.* 310, 66 *S. Ct.* 154, 90 *L. Ed.* 95 (1945); *McGee v. International Life Insurance Co.,* 355 *U. S.* 220, 78 *S. Ct.* 199, 2 *L. Ed. 2d* 223 (1957); *cf. J. W. Sparks & Co. v. Gallos,* 47 *N. J.* 295 (1966). If we were to undertake to determine, in this escheat proceeding, the extent and jurisdictional effect of the defendant's actual activities in those states, we would indeed go a long way towards defeating the very simplicity and ease of administration sought by the Supreme Court in *Texas.*

In any event, the creditors' states could come to New Jersey where our courts would readily entertain actions by them based on their revenue claims against the defendant. While the plaintiff's contention to the contrary may find

support in early expressions elsewhere, our own decisions leave little doubt on the subject. See *Pennhurst State School v. Estate of Goodhartz,* 42 *N. J.* 266, 270 (1964); *People of State of New York v. Coe Mfg. Co.,* 112 *N. J. L.* 536 (*E. & A.*), *certiorari* denied 293 *U. S.* 576, 55 *S. Ct.* 89, 79 *L. Ed.* 674 (1934); *Standard, etc., Co. v. American Salpa Corp.,* 113 *N. J. Eq.* 468 (*Ch.* 1933). As was indicated by the recent opinion in *Pennhurst,* there is no sensible basis for declining to determine proceedings by foreign states for the enforcement of rights created by their laws neither penal in nature nor offensive to policy. 42 *N. J.,* at *p.* 271. Escheat laws are not penal and do not offend any policy of our State. See *State by Van Riper v. American Sugar Refining Co., supra,* 20 *N. J.,* at *p.* 297; *State by Richman v. Sperry & Hutchinson Co.,* 23 *N. J.* 38, 43–44 (1956).

During oral argument, counsel for the plaintiff referred to *L.* 1966, *c.* 285 (*N. J. S. A.* 32:28–1 *et seq.*) which makes provision for an interstate compact in regard to unclaimed property. He pointed out that it does not take effect until similar legislation is adopted in several designated states and that it has no present application. It shall therefore not be dealt with here although some of its terms may in due course require judicial interpretation. We are satisfied that the Chancery Division's disposition below applied *Texas* sympathetically and soundly and entailed little or no danger that the defendant would not ultimately be compelled to honor its responsibility of remitting the unclaimed property to the appropriate creditors' states as evidenced by the recorded last known addresses.

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, HALL, SCHETTINO and HANEMAN—6.

*For reversal*—None.