60 N.J. 289 (1972)
288 A.2d 289
COMMONWEALTH OF PENNSYLVANIA, PLAINTIFF-RESPONDENT,
v.
JOHN A. KERVICK, STATE TREASURER OF NEW JERSEY, DEFENDANT-APPELLANT.
The Supreme Court of New Jersey.
Argued January 24, 1972.
Decided March 6, 1972.
*290 Mr. Stephen L. Skillman, Assistant Attorney General argued the cause for the appellant (Mr. George F. Kugler, Jr., Attorney General, attorney; Mrs. Marilyn Loftus Schauer, First Assistant Attorney General, of counsel; Mr. Robert W. Dempsey and Mr. Charles L. Terribile, Deputy Attorneys General, and Mr. John Wefing, Law Assistant, on the brief).
Mr. Howard R. Yocum argued the cause for the respondent (Mr. Michael Edelman of the Pennsylvania bar on the brief).
PER CURIAM:
In Commonwealth of Pennsylvania v. Kervick, 114 N.J. Super. 1 (1971), the Chancery Division held that Pennsylvania is entitled to certain moneys which had been abandoned by persons with last known Pennsylvania addresses and had been turned over by the United States Steel *291 Corporation, a New Jersey corporation, to the defendant State Treasurer of New Jersey pursuant to the custodial escheat law (L. 1951, c. 304; N.J.S.A. 2A:37-29 et seq.); it also held that the defendant could not assert a counterclaim to recover moneys abandoned by persons having last known addresses in New Jersey and turned over by various corporations to Pennsylvania under its escheat legislation. The defendant appealed to the Appellate Division and we certified before argument there.
In 1946 New Jersey asserted its sovereign power to appropriate abandoned personal property by the adoption of an absolute escheat law (L. 1946, c. 155; N.J.S.A. 2A:37-11 et seq.). See State, by Parsons v. Standard Oil Co., 5 N.J. 281 (1950), aff'd, 341 U.S. 428, 71 S.Ct. 822, 95 L.Ed. 1078 (1951). In 1951 it adopted a custodial escheat law which set forth an alternate method for taking custody of and escheating personal property which remained unclaimed for five successive years. L. 1951, c. 304; N.J.S.A. 2A:37-29 et seq. Thereafter it instituted numerous custodial escheat actions including those referred to in reported decisions of this Court. See, e.g., State v. Amsted Industries, 48 N.J. 544 (1967); State, by Hilgendorf v. American Can Co., 42 N.J. 32, cert. denied, 379 U.S. 826, 85 S.Ct. 53, 13 L.Ed.2d 36 (1964); State by Furman v. Jefferson Lake Sulphur Co., 36 N.J. 577, appeal dismissed, 370 U.S. 158, 82, S.Ct. 1253, 8 L.Ed.2d 402 (1962); State v. Union Bag-Camp Paper Corp., 35 N.J. 390 (1961); State by Richman v. Sperry & Hutchinson Co., 23 N.J. 38 (1956); State by Parsons v. United States Steel Corp., 22 N.J. 341 (1956); State by Van Riper v. American Sugar Refining Co., 20 N.J. 286 (1956). In these actions the New Jersey officials followed the then pertinent judicial holdings including State by Van Riper v. American Sugar Refining Co., supra, where we had rejected a claim by Massachusetts to abandoned dividends declared by a New Jersey corporation and payable to stockholders whose last known addresses were in Massachusetts. However, in 1965 the Supreme Court announced the rule that *292 in such situations the abandoned property should escheat to the State of last known address rather than the State of incorporation; it did so not as a matter of precedent or logic but as a matter "of ease of administration and of equity." Texas v. New Jersey, 379 U.S. 674, 683, 85 S.Ct. 626, 13 L.Ed.2d 596, 602 (1965). Custodial judgments entered in accordance with N.J.S.A. 2A:37-30 subsequent to the Supreme Court's decision have honored its ruling (cf. State v. Amsted Industries, supra, 48 N.J. 544) and recently our Legislature enacted a comprehensive revision of the custodial escheat law with Texas v. New Jersey, supra, undoubtedly in mind. L. 1967, c. 135; N.J.S.A. 2A:37-29 et seq.
In 1953 New Jersey instituted an action against the United States Steel Corporation under the custodial escheat law; its complaint sought moneys such as dividends, interest, wages, etc., which had remained unclaimed during the preceding five years. Three subsequent actions of similar nature were instituted against the Corporation during the period from 1953 to 1959. In each of the actions a judgment of custody was entered in accordance with N.J.S.A. 2A:37-30; the last of these was entered on August 26, 1960. In due course the moneys were turned over by the Corporation to the State Treasurer along with lists of the individual amounts and the names and addresses of the owners as shown on the books of the Corporation. N.J.S.A. 2A:37-31. Pennsylvania alleges that the aggregate amount belonging to persons with last known Pennsylvania addresses is $181,541.76 but the defendant alleges that this amount has been substantially reduced by payments made to such persons from time to time by the State Treasurer.
After the entry of the custodial judgments under N.J.S.A. 2A:37-30 and his receipt of the moneys, the State Treasurer mailed notices to the owners whose names appeared on the lists advising them that if claim was not made within two years an escheat action would be instituted under the statute. In addition he mailed notices to the Attorney General of Pennsylvania (as the State of last known address) advising *293 him, in the then terms of N.J.S.A. 2A:37-32, "to present any claim that such state might have to such money." N.J.S.A. 2A:37-32 provided that if a claim is made to the State Treasurer within the statutory two-year period, he shall determine whether the claim is valid, and if he determines that it is valid he is directed to pay the money so claimed "to the person entitled thereto." If he determines that the claim is invalid he is directed to reject it and thereupon the claimant may apply to the Chancery Division "for a review of his determination, and the claim shall thereupon be heard and determined, de novo."
N.J.S.A. 2A:37-34 provided that if moneys deposited with the State Treasurer shall remain unclaimed for the period of two years from the date of the mailing of the notices to the owner, the "moneys shall escheat to the state and the treasurer shall inform the attorney general thereof." Later sections contemplated further steps including summary action (N.J.S.A. 2A:37-36), posted notice (N.J.S.A. 2A:37-37), and judgment of escheat (N.J.S.A. 2A:37-39). New Jersey did not pursue these steps after the two-year period and at oral argument it took the position that they were legally dispensable and had in actual practice been dispensed with. It apparently viewed them as ministerial and at most designed to afford a formal measure of further protection to the true owners but no one else.
Although Pennsylvania received the notices called for by N.J.S.A. 2A:37-32 it took no action within the two-year period. Indeed no action was taken by Pennsylvania claiming any right to the moneys transferred to the State Treasurer until after the 1965 decision in Texas v. New Jersey, supra. In 1966 Pennsylvania instituted an escheat action in one of its own courts against the United States Steel Corporation. New Jersey was not a party to this action nor did it have notice thereof. On October 4, 1966 a consent judgment was entered in the Common Pleas Court of Dauphin County, Pennsylvania; although the judgment provided for escheat it also provided that the United States *294 Steel Corporation would be relieved of any obligation to make payment under the judgment. On October 26, 1966 the State Treasurer received a letter from Pennsylvania requesting that New Jersey pay the moneys received from the United States Steel Corporation belonging to persons whose last known addresses were in Pennsylvania. This request was formally rejected by letter dated October 1, 1968.
On May 26, 1969 Pennsylvania filed its complaint in the Chancery Division seeking the sum which had been received by the State Treasurer under the custodial escheat law from the United States Steel Corporation and represented abandoned moneys of persons with last known Pennsylvania addresses. The defendant filed an answer along with a counterclaim seeking discovery and recovery of moneys abandoned by persons with last known addresses in New Jersey and turned over by various corporations to Pennsylvania under its escheat legislation. A pretrial order was entered and briefs were filed but no testimony was taken and no further record was made. The Chancery Division considered that there were no disputed facts and that the entire matter could properly and finally be determined on the briefs before it. 114 N.J. Super. at 6. However, we disagree and have concluded that the matter should now be remanded for the making of a complete record and for further proceedings in conformity with the views hereinafter expressed.
There is a preliminary item which may appropriately be referred to at this point. The defendant contended below that since this was a controversy between States it should be determined by the United States Supreme Court rather than by the Chancery Division. See Western Union Teleg. Co. v. Pennsylvania, 368 U.S. 71, 82 S.Ct. 199, 7 L.Ed.2d 139 (1961); State by Hilgendorff v. American Can Co., supra, 42 N.J. at 42. The Chancery Division rejected this contention, pointing out that Pennsylvania had "voluntarily submitted itself to the jurisdiction of the New Jersey courts, and to the extent of this submission Pennsylvania will be bound by the judgment of this court." 114 N.J. Super. at *295 11. See State by Van Riper v. American Sugar Refining Co., supra, 20 N.J. 286. It did not discuss the scope of New Jersey's sovereign immunity as a defense generally to actions against it by other States in courts other than the Supreme Court but indicated that the immunity, insofar as the present proceeding is concerned, may be considered waived by the provision in N.J.S.A. 2A:37-32 with respect to the State of last known address (114 N.J. Super. at 11-12); in any event, the defendant does not now attack the Chancery Division's determination that Pennsylvania may assert its claim against New Jersey in our courts and we shall not pursue the matter. Cf. P, T & L Const. Co. v. Comm'r., Dept. of Trans., 55 N.J. 341 (1970); O'Neill v. State Hwy. Dept., 50 N.J. 307 (1967); East Orange v. Palmer, 47 N.J. 307 (1966).
The defendant contended below that the rule in Texas v. New Jersey, supra, should not be applied retroactively to prior custodial judgments entered pursuant to New Jersey's custodial escheat law. His contention was rejected by the Chancery Division (114 N.J. Super. at 15-17) but he now renews it before us. He stresses the extent of New Jersey's reliance on prior law (State by Parsons v. Standard Oil Co., supra, 341 U.S. 428, 71 S.Ct. 822, 95 L.Ed. 1078; State by Van Riper v. American Sugar Refining Co., supra, 20 N.J. 286) and the adverse consequences of retroactive application. He asserts that "[t]he present fiscal plan of the state would be unbalanced by a decision in favor of Pennsylvania" since "New Jersey has used this money in reliance upon its right to do so." He asserts further that "[t]he state budget in part relies upon this asset" and that recognition of rights in other States with respect to pre-1965 custodial judgments would result in "serious hardship to the residents of New Jersey." He points out that the application of Texas v. New Jersey, supra, to prior custodial judgments "would require reexamination of all moneys taken into custody" prior to 1965 in all of the many States having custodial escheat laws and notes that the number of *296 resulting suits would be "tremendous" and the bookkeeping requirements would be "unreasonable." Indeed at oral argument his counsel suggested that the administrative problems would be overwhelming, that the costs and expenditures would be substantial, and that the operational results would be unjust and unfair.
The difficulty with all of the foregoing is that the record contains no supporting material and the Chancery Division should have had it before it considered the applicability of Texas v. New Jersey, supra. There is no question that the Supreme Court could have explicitly declared that its decision would apply only to subsequent custodial judgments and subsequent absolute judgments of escheat. Such a declaration might perhaps have advanced its goal of "ease of administration." 379 U.S. at 683, 85 S.Ct. at 631, 13 L.Ed.2d at 602. But the Supreme Court was silent on the matter and the Chancery Division's responsibility, after obtaining a complete record, may call for a judgment anticipating the Supreme Court's views in the light of its expressions in other fields where it has expressly dealt with the issue of retroactivity. See Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Cipriano v. Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); Annot., "United States Supreme Court's Views as to Retroactive Effect of Its Own Decisions Announcing New Rules," 22 L.Ed.2d 821 (1969); cf. Goldberg et al. v. Traver, et al., 52 N.J. 344 (1968); Willis et al. v. Dept. of Cons. & Ec. Dev., 55 N.J. 534 (1970); Darrow v. Hanover Township, 58 N.J. 410 (1971).
The complete record in the Chancery Division should also include testimony after suitable discovery and factual and legal determinations with respect to the defendant's counterclaim, for we are satisfied that the Chancery Division erred in holding that the defendant's counterclaim could not be pursued in this proceeding. It cited Pennhurst State *297 School v. Estate of Goodhartz, 42 N.J. 266 (1964) and Korff v. G and G Corp., 21 N.J. 558 (1956), but they embody principles which may fairly be applied here in support of the maintenance of the counterclaim. Thus in Korff we upheld a defendant's right to assert a counterclaim against a nonresident plaintiff; this holding was in conformity with the broad terms of our court rules which have long provided that a defendant may, by way of counterclaim, assert "any claim against the opposing party whether or not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." R. 4:7-1; 21 N.J. at 566-567.
In Pennhurst we upheld the right of Pennsylvania to maintain an action seeking recovery from a decedent's estate being administered in New Jersey; in the course of our opinion we specifically pointed out that "[w]hen a foreign state sues in the courts of our State it lays aside its sovereignty and is to be dealt with as a private suitor. See Western Lunatic Asylum v. Miller, 29 W. Va. 326, 1 S.E. 740, 743 (Sup. Ct. App. 1887); cf. Guaranty Trust Co. of New York v. United States, 304 U.S. 126, 133-134, 58 S.Ct. 785, 82 L.Ed. 1224, 1228-1229 (1938); Washington Const. Co. v. United States of America, 75 N.J. Super. 536, 539 (Ch. Div. 1962)." 42 N.J. at 273. This principle, conjoined with R. 4:7-1, leads unmistakably to the conclusion that the defendant was well within his rights in seeking to pursue his counterclaim against Pennsylvania in this proceeding.
Reversed and remanded.
For reversal and remandment: Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, HALL, SCHETTINO and MOUNTAIN  6.
For affirmance: None