**AMERICAN PETROFINA COMPANY OF TEXAS, et al., Plaintiffs,**

v.

**Odie A. NANCE, Robert L. Wadley, and Don Kilpatrick, Members of the Oklahoma Tax Commission, Defendants.**

**No. CIV–85–1679–W.**

United States District Court,
W.D. Oklahoma.

April 24, 1986.

Clyde A. Muchmore, Barbara Snow Gilbert, Harvey D. Ellis, Jr., Crowe & Dunlevy, Oklahoma City, Okl., for plaintiffs.

J. Lawrence Blankenship, Donna E. Cox, Melanie Parks Kierig, Oklahoma Tax Com'n, Oklahoma City, Okl., for defendants.

## ORDER

LEE R. WEST, District Judge.

This matter came on for trial before the Court sitting without a jury upon plaintiffs' claim that Okla.Stat. tit. 60, §§ 651–686 (1981) (Oklahoma Uniform Act) and Okla. Stat. tit. 60, §§ 658.2–658.8 (Supp.1984) (1984 Act) are unconstitutional. Having heard the testimony of the witnesses and having examined the documentary evidence submitted by the parties, the Court makes the following factual findings and draws the following legal conclusions therefrom. Rule 52 of the Federal Rules of Civil Procedure.

### Findings of Fact

1. Each plaintiff corporation (holder), with its state of incorporation in various states, is engaged in the production or purchase, or both, of oil and gas in the State of Oklahoma.

2. Defendants comprise all of the members of the Oklahoma Tax Commission.

3. Defendants' duties include the administration and enforcement of the Oklahoma Uniform Act and 1984 Act.

4. Defendants are authorized to adopt any necessary rules or regulations for the administration and enforcement of the Oklahoma Uniform Act and 1984 Act.

5. Each plaintiff is subject to the requirements and duties of the Oklahoma Uniform Act and 1984 Act.

6. The Oklahoma Uniform Act and 1984 Act set forth the scheme by which a holder of unclaimed funds is required to transfer such funds to the State and specifies the conditions under which the State holds such funds for the owner.

7. The Oklahoma Uniform Act requires transfers of funds after such funds are unclaimed or not distributed for a period of seven years.

8. The 1984 Act requires transfer of any intangible property interest generated by a mineral interest in Oklahoma after such property is unclaimed or not distributed for a period of one year.

9. The 1984 Act requires escrow of all such property and transfer upon November 1 after such property has been held for more than one year.

10. Plaintiffs, together with other similar holders, hold and have held for more than one (1) year, as of November 1, 1985 millions of dollars of unpaid or undistributed proceeds generated from mineral interests in Oklahoma.

11. Each plaintiff is a holder of intangible personal property which has been unclaimed by the owner for more than seven years after becoming payable or distributable.

12. Each plaintiff is the holder of monies generated by mineral interests located in the State of Oklahoma owing to persons who are unknown or have not been located within one year after the funds became payable.

13. Each plaintiff holds monies generated by mineral interests located in the State of Oklahoma owing to persons whose last known addresses on the books and records of the respective plaintiff are located in states other than Oklahoma.

14. Many plaintiffs are incorporated in states other than Oklahoma, and each such plaintiff holds intangible property owing to persons whose last known addresses are not reflected upon the books and records of such plaintiff.

15. Some plaintiffs have reported or paid funds to their state of incorporation because the last known address of the owner, as reflected on the plaintiff's books and records, is a state which makes no provision for custodial taking or escheat of such funds, which funds Oklahoma claims under the 1984 Act because they were generated from mineral interests located in Oklahoma.

16. The 1984 Act first imposed reporting and payment duties on plaintiffs and others beginning November 1, 1985.

17. Before this action was filed, defendants made plain their intention to vigorously enforce the 1984 Act as well as the Oklahoma Uniform Act.

18. Defendants have audited many plaintiffs to determine whether they have complied with Oklahoma's Uniform Act and the 1984 Act.

19. For each plaintiff who was audited, defendants state property which should have been delivered was not.

20. Defendants informed each audited plaintiff that it would be held liable for 18% interest on the amount owing from the time such property should have been delivered.

21. Most states have statutory authorization and procedures to share information with other states and to consider and pay claims of other states.

22. This Court entered a preliminary injunction on August 21, 1985, enjoining defendants from enforcing the provisions of the 1984 Act.

23. The Court found that plaintiffs had raised serious, substantial, difficult and doubtful questions as to the constitutional validity of the 1984 Act.

24. The Court declined, however, to grant the extraordinary relief of a preliminary injunction as to enforcement of the Oklahoma Uniform Act.

### Conclusions of Law

1. This Court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C. § 1331; this case presents a controversy arising under the Constitution and laws of the United States. This Court has previously denied defendants' motion to dismiss plaintiffs' action, wherein defendants' contended that this Court lacked subject matter jurisdiction over this action. Defendants contended this Court lacked subject matter jurisdiction to review the constitutionality of the Oklahoma Uniform

Act and 1984 Act because defendants characterized these Acts as revenue raising matters. This Court declines to reconsider its prior order.

2. Plaintiffs contend the Oklahoma Uniform Act and 1984 Act violate the Fourteenth Amendment to the United States Constitution because both expose plaintiffs to the threat of multiple liability; the Oklahoma Uniform Act fails to require adequate notice of transfers of property valued at less than fifty dollars ($50.00); and, the 1984 Act removes all statutory safeguards present under the Oklahoma Uniform Act. Defendants dispute each of these contentions by asserting that the requirements and limitations of both Acts are rationally related to State interests.

3. Plaintiffs further contend the 1984 Act is preempted by federal common law set out in *Texas v. New Jersey*, 379 U.S. 674, 85 S.Ct. 626, 13 L.Ed.2d 596, *decree rept'd.*, 380 U.S. 518, 85 S.Ct. 1136, 14 L.Ed.2d 49 (1965), because it conflicts with the priority scheme therein set out by the Supreme Court. Defendants dispute this contention on the grounds that state law cannot be preempted by conflicting federal common law.

### 1984 Act

4. The Oklahoma Uniform Act is a comprehensive statutory scheme for taking custody of abandoned intangible property, and covers every form of abandoned intangible property including property generated from mineral interests. The Oklahoma Uniform Act was adopted from the 1966 version of the Uniform Disposition of Unclaimed Property Act (the Uniform Act), which has been adopted by many other states. Oklahoma, however, has not adopted the 1981 revisions to the Uniform Act. The 1984 Act is not part of any uniform law. It establishes separate criteria governing Oklahoma's custodial taking of one particular type of abandoned intangible property, that generated from mineral interests located in Oklahoma. The 1984 Act differs from the Oklahoma Uniform Act in several significant respects.

5. Pursuant to its authority to exercise original jurisdiction, in *Texas v. New Jersey*, the United States Supreme Court set out a priority scheme to be used among states in determining which state could escheat or take custody of abandoned intangible property.

6. The scheme devised by the Supreme Court was as follows:

(a) if the books and records of the holder of the property reflect the last known address of the owner, and the state of last known address has a law under which it would be entitled to take custody of or escheat the property, the property goes to that state to the extent of that state's power to escheat or take custodially;

(b) if the books and records of the holder of the property do not reflect the last known address of the owner, the state of incorporation of the holder of the property has the right to take custody of or escheat the property, subject to the right of another state to recover the property upon proof that it was the state of last known address; and,

(c) if the books and records of the holder of the property reflect the last known address of the owner, and the state of last known address has no law under which it could take custody of or escheat the property, then the state of incorporation of the holder is entitled to take the property, subject to the right of the state of last known address to recover the property if and when it makes provision for taking custody of or escheating the property.

7. The rule of priority announced in *Texas v. New Jersey* was designed to promote ease of administration and equity. 379 U.S. at 683, 85 S.Ct. at 631.

8. The Oklahoma Uniform Act on its face strictly observes the scheme set out in *Texas v. New Jersey*. 60 O.S.1981, § 659.

9. The 1984 Act does not observe the priority scheme set out in *Texas v. New Jersey*.

10. The 1984 Act expressly conflicts with the scheme for escheat or custodial

taking outlined by the Supreme Court in *Texas v. New Jersey.*

11. The Supreme Court has characterized its decision in *Texas v. New Jersey* as an example of federal common law. *Illinois v. City of Milwaukee,* 406 U.S. 91, 105–06, 92 S.Ct. 1385, 1393–94, 31 L.Ed.2d 712 (1972) *later opinion* 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981); *see also Glus v. G.C. Murphy Co.,* 629 F.2d 248, 263–64 (3rd Cir.1980) *dissenting on other grds., vacated on other grds.,* 451 U.S. 935, 101 S.Ct. 2013, 68 L.Ed.2d 321 (1981); Monoghan, *The Supreme Court: 1974 Term,* 89 Harv.L.Rev. 1, 14 and n. 74 (1975); Note, *Protective Jurisdiction,* 57 N.Y.U.L. Rev. 933, 949 and n. 88 (1982).

■ 12. Decisions rendered in cases involving disputes between states and relying upon the original jurisdiction of the Supreme Court create federal common law. *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 95 and n. 33, 101 S.Ct. 1571, 1582 and n. 33, 67 L.Ed.2d 750 (1981); *Kansas v. Colorado,* 206 U.S. 46, 97–98, 27 S.Ct. 655, 667–68, 51 L.Ed. 953 (1907); 17 Wright, Miller & Cooper *Federal Practice and Procedure,* § 4052 at 177–78.

13. The rules of federal common law developed in resolving disputes between states have been applied not only to suits between states but to suits between private litigants as well. *See Hinderlider v. La-Plata River & Cherry Creek Ditch Co.,* 304 U.S. 92, 110–11, 58 S.Ct. 803, 810–11, 82 L.Ed. 1212, *reh. den.,* 305 U.S. 668, 59 S.Ct. 55, 83 L.Ed. 433 (1938); *United States v. Champlin Refining Co.,* 156 F.2d 769 (10th Cir.1946), *aff'd.,* 331 U.S. 788, 67 S.Ct. 1346, 91 L.Ed. 1818, *reh. den.,* 331 U.S. 869, 67 S.Ct. 1727, 91 L.Ed. 1872 (1947); *see also Texas v. Pankey,* 441 F.2d 236 (10th Cir.1971); 1A *Moore's Federal Practice,* ¶ 0.320 at p. 3257.

14. Federal common law is federal law as much as if it had been enacted by Congress. *Illinois v. City of Milwaukee,* 406 U.S. at 99, 92 S.Ct. at 1390.

■ 15. State laws are preempted to the extent they conflict with federal common law set out in a decision based upon the Supreme Court's original jurisdiction and rendered for the purpose of national uniformity. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 409 F.2d 718, 722 (2nd Cir.1969), *rev'd. on other grds.,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *see also Teamsters, Chauffeurs, Warehousemen–Helpers v. Lucas Flour Co.,* 369 U.S. 95, 103–04, 82 S.Ct. 571, 576–77, 7 L.Ed.2d 593 (1962); *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 314, 75 S.Ct. 368, 370, 99 L.Ed. 337, *reh. den.,* 349 U.S. 907, 75 S.Ct. 575, 99 L.Ed. 1243 (1955); *Francis v. Southern Pacific Co.,* 333 U.S. 445, 450, 68 S.Ct. 611, 613, 92 L.Ed. 798 (1948).

■ 16. The Supreme Court's decision in *Texas v. New Jersey,* may be relied upon to prevent state officials from enforcing a state law in conflict with the *Texas v. New Jersey* scheme for escheat or custodial taking of unclaimed property, because the decision was rendered as a result of the Supreme Court exercising its original jurisdiction and to ensure uniformity. *See State v. Amsted Indus.,* 48 N.J. 544, 226 A.2d 715, 718 (1967).

17. The 1984 Act conflicts with the *Texas v. New Jersey* scheme for escheat or custodial taking of unclaimed property in the following ways:

a. the 1984 Act ignores the right of another state to recover property when the last known address of the owner is within the borders of that other state;

b. the 1984 Act ignores the right of another state to recover property when there is no last known address of the owner;

c. the 1984 Act ignores the right of another state to recover property when the state within which there is a last known address has no law governing the custody or escheat of unclaimed property; and,

d. the 1984 Act utilizes a scheme, for custodial taking of unclaimed property, that was considered and rejected by the Supreme Court. *Texas v.*

*New Jersey,* 379 U.S. at 679 n. 9 [85 S.Ct. at 629 n. 9].

18. The 1984 Act is preempted by the decision of the Supreme Court in *Texas v. New Jersey.*

19. Because this Court finds the 1984 Act is preempted, it need not address whether the 1984 Act violates the Fourteenth Amendment.

### Oklahoma Uniform Act

20. The Oklahoma Uniform Act does not require that a judgment be entered at the time of transfer of unclaimed funds to the State.

21. The provisions of the Oklahoma Uniform Act provide the only assurance that a holder has against multiple liability.

22. Okla.Stat. tit. 60, § 664 (1981) provides that once a holder transfers funds to the Oklahoma Tax Commission, upon proof of subsequent payment to any person appearing to the holder to be entitled thereto and proof that the payee was entitled thereto, the Oklahoma Tax Commission shall forthwith reimburse the holder for the subsequent payment.

23. Okla.Stat. tit. 60, § 684 (1981) provides that "upon claim and proof properly made by the duly empowered authorities of any state that the last known address of any owner was within its borders and that the property involved is subject to escheat or to be taken into custody as unclaimed property under its laws, [the Oklahoma] Tax Commission shall pay or surrender to such authorities any property of any such owner or its proceeds that may have come into its custody under the provisions of [the Oklahoma Uniform Act]."

24. The Oklahoma Uniform Act does not absolutely guarantee that a holder will be free from further liability in four instances.

25. First, the Oklahoma Uniform Act does not guarantee that Oklahoma will defend or indemnify a holder for any liability incurred in excess of the amount transferred, if subsequent litigation ensues, after a holder has transferred unclaimed funds.

26. The Supreme Court has stated in dicta that a holder of unclaimed property is deprived of due process of law if compelled to relinquish it without assurance that it will not be held liable for the same again in another jurisdiction. *Western Union Co. v. Pennsylvania,* 368 U.S. 71, 75, 82 S.Ct. 199, 201, 7 L.Ed.2d 139 (1961).

27. This Court construes the dicta in *Western Union* to mean that a holder is deprived of due process if that holder must from its own funds pay the value of the unclaimed property previously transferred to Oklahoma to another person or state, without reimbursement for that value. The Court does not construe the dicta in *Western Union* to require that once a state has custody of unclaimed funds it must indemnify the previous holder for any liability or expense in excess of the amount transferred.

28. In order to find that Oklahoma's failure to indemnify the previous holder, for any expense or liability in excess of the amount transferred, was a violation of due process, the Court must find such a failure constitutes "arbitrary governmental action." *Martin v. Harrah Independent Sch. Dist.,* 579 F.2d 1192, 1196 (10th Cir. 1978) *rev'd.* 440 U.S. 194, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979) (same standard applied).

29. The issue, therefore, is whether reimbursement alone, without guarantee of indemnification for any expense or liability in excess of the amount transferred, rationally advances a valid state interest.

30. Resolution of this issue must be restricted to an inquiry into whether any state of facts, either known or which could reasonably be assumed, affords support for the State's failure to indemnify a holder for any liability or expenses incurred in excess of the amount transferred. *See U.S. v. Carolene Products Co.,* 304 U.S. 144, 154, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938).

31. The asserted interests of the State in enacting the Oklahoma Uniform Act are its interests in raising revenues, safeguarding society and protecting and pursuing property.

32. In support of Oklahoma's failure to guarantee indemnification of any liability in excess of the amount transferred it is reasonable to assume a holder is in the best position to avoid the potential for excess liability by ascertaining and locating the proper owner of the unclaimed funds.

33. By limiting the State's duty to reimbursement of the transferred amount only, a holder's incentive to ascertain and locate the proper owner is enhanced.

34. If the holder somehow fails to ascertain or locate the proper owner or properly keep its records, and such failure results in litigation, the holder should bear the burden of such failure, not the State.

35. Requiring that the State indemnify a holder for expenses and liability incurred beyond the transferred amount would not only put the State at risk for a holder's mistakes or lack of diligence but also require that the State utilize public funds to satisfy any such expenses and liability incurred.

36. For these reasons, this Court finds the State's limited obligation of reimbursement or direct payment of the transferred amount only is rationally related to State interests.

37. Second, the Oklahoma Uniform Act does not expressly state that Oklahoma will directly pay another state if that state claims, pursuant to the *Texas v. New Jersey* scheme, property subject to escheat or custodial taking because it is the state of incorporation or domicile of the holder.

38. Any holder subject to the Oklahoma Uniform Law and the laws of another state following the *Texas v. New Jersey* scheme, must transfer unclaimed property to its state of incorporation in the absence of a last known address for the owner or in the absence of escheat or custodial taking laws in the state in which the last known address of the owner is located.

39. Because a holder has only one state of incorporation, in either event requiring transfer to the state of incorporation, transfer to the proper state of incorporation would forestall the likelihood of further liability.

40. Multiple liability due to more than one state claiming to be the state of incorporation or domicile has never occurred to the knowledge of this Court or the parties hereto.

41. Perhaps an instance of such liability would occur if one state interpreted *Texas v. New Jersey* as requiring transfer to the state of corporate domicile, rather than the state of incorporation.

42. Such a dispute could be resolved, however, by relying upon the Supreme Court's decree, which held the property should be transferred to the state of incorporation. 380 U.S. 518–519, 85 S.Ct. 1136, 14 L.Ed.2d 49 (1965).

43. Interpreting *Texas v. New Jersey* as requiring transfer to the state of incorporation is in keeping with the Supreme Court's intent to set out a scheme to ease administration; the state of incorporation is more easily identified than state of domicile and does not change.

44. Third, the Oklahoma Uniform Act does not guarantee that a holder will not be subject to multiple liability in the event that it is subject to another state's law that does not follow the scheme set out in *Texas v. New Jersey.*

45. To require that Oklahoma law protect a holder from liability in another state under a statute in conflict with *Texas v. New Jersey* would decrease the incentive for holders to ascertain and locate the owner of the funds and require utilization of public funds. Moreover, it would require that Oklahoma protect a holder from enforcement of another state's law which according to this Court's analysis is preempted by *Texas v. New Jersey.*

46. For these reasons, it is neither arbitrary nor irrational that Oklahoma does not protect a holder from such liability.

47. In any event of a controversy between states, there is at least one method for resolving any disputes without subjecting the holder to multiple liability.

48. The dispute could be resolved upon request by one state that the United States Supreme Court exercise its original juris-

diction, pursuant to Art. III, § 2 of the United States Constitution. *Western Union*, 368 U.S. at 77, 82 S.Ct. at 202.

49. Fourth, the Oklahoma Uniform Act does not protect a holder from multiple liability if such holder subsequently pays money to a person the State does not agree is the proper owner.

50. There is nothing arbitrary about Oklahoma's requirement that it must agree the payee or claimant is the proper owner prior to requiring the State to pay such person or reimburse a holder for payment to such person. To the contrary, giving a holder irrefutable authority to direct payment, once transfer to the State has occurred, would be arbitrary and irresponsible.

51. Finally, the fact that the Oklahoma Uniform Act does not require notice to owners preceding and regarding the transfer to the State of their property valued at less than fifty dollars ($50.00) is not a violation of due process. *See* Okla.Stat. tit. 60, § 662(c) and (d) (1981).

52. Dispensing with mailing and publication notice requirements upon both the holders and State as to property valued at less than fifty dollars ($50.00) is reasonable in view of the cost of such mailing and publication notice and the remote likelihood of success in contacting the owner.

53. Plaintiffs fail to present sufficient reason for this Court to conclude that failure of the State to provide indemnity for any liability and expenses incurred in excess of the amount transferred and notice of transfers of unclaimed property with a value of less than fifty dollars ($50.00) is not rationally related to legitimate state interests or to override the presumption that the Oklahoma Uniform Act is constitutional. *Martin,* 440 U.S. at 198, 99 S.Ct. at 1064.

54. Accordingly, the Court finds the declaratory relief sought by plaintiffs with regard to the 1984 Act only is warranted and justified. Plaintiffs' request that the Court enter a declaratory judgment that the 1984 Act is invalid and unenforceable pursuant to the supremacy clause of the United States Constitution, because it is inconsistent with the federal common law set forth in *Texas v. New Jersey* is GRANTED. Plaintiffs' request that the Court enter a declaratory judgment that the Oklahoma Uniform Act is invalid and unenforceable pursuant to the due process clause of the United States Constitution, because the Oklahoma Uniform Act is neither arbitrary nor unreasonable in its limited guarantee against multiple or further liability nor its failure to require notice of transfers of property valued at less than fifty dollars ($50.00) is DENIED.