CRABTREE, J.T.C.
(temporarily assigned).
TAX COURT OF NEW JERSEY DOCKET NUMBERS
L 5002-75 L 4653-75
L 688-76 L 3758-76
L 1071-77 L 1833-77
L 2314r-78
L 5000-75 L 4651-75
L 695-76 L 3759-76
L 1064-77 L 1831-77
L 2313-78
L 5001-75 L 4652-75
L 693-76 L 3757-76
L 1065-77 L 1832-77
L 1829-77 L 2312-78
L 4998-75 L 4655-75
L 692-76 L 3755-76
L 1066-77 L 2308-78
L 4997-75 L 4656-75
L 691-76 L 3752-76
L 1067-77 L 1828-77
L 2309-78
L 4995-75 L 4657-75
L 690-76 L 3753-76
L 1068-77 L 1827-77
L 2311-78
L 4999-75 L 4654-75
L 694-76 L 3756-76
L 1069-78 L 1830-77
L 2307-78
L 4966-75 L 4658-75
L 689-76 L 3754-76
L 1070-77 L 1826-77
L 2310-78
02-38426A-79 02-38426A-79F
02-38399A-79 02-38399A-79F
This case is the latest and, with any luck, the last chapter in the epic saga of the Brookchester Apartments tax appeals which began, innocently enough, with the filing of tax appeals in the Division of Tax Appeals for the years 1975 through 1979. In those appeals, which were transferred to the Tax Court upon that *350 court’s creation in 1979, the owners, John J. Brunetti and others (hereafter Brunetti), sought reductions in local property tax assessments for the Brookchester Apartments, a 1300-unit garden apartment complex in the Borough of New Milford.
When Brunetti sought to withdraw the appeals in exchange for exemption from the New Milford Rent Control Ordinance, Arthur Schumacher and others, tenants in Brookchester, together with Brookchester Tenants Association (hereafter the Association), intervened and obtained an order enjoining the withdrawal. The Tax Court’s order of December 8,1981 authorized the intervention and certified the ease as a class action.
The tax appeals were tried in this court in 1986. At the trial the landlord was represented by Hannoch Weisman and the Association was represented by Skoloff & Wolfe. The interest of the Association was predicated upon a borough ordinance which provided that all property tax refunds belonged to tenants. This court in a bench opinion rendered in January 1987 determined that significant reductions were in order and judgments .to that end were entered on March 24, 1987. The reductions were extended to 1980 and 1981 by virtue of the freeze act, N.J.S.A. 54:51A-8.
The case now before the court involves the claims of the Association, the Borough of New Milford (hereafter the Borough) and the State of New Jersey (hereafter the State) to so much of the tax refunds as may be payable to Brookchester tenants who cannot be found. The Association claims entitlement to all unclaimed funds, the Borough asserts rights to the unclaimed funds by virtue of a borough ordinance enacted in 1992, and the State asserts custody over unclaimed funds by virtue of the Uniform Unclaimed Property Act, L.1989, c. 58, N.J.S.A. 46:30B-1 et seq. (the act).
The funds in dispute are presently held in an interest-bearing escrow account created pursuant to this court’s order of June 26, 1992, which embodied the terms of settlement of litigation commenced by Hannoch Weisman against Brunetti, the Association and the Borough to recover counsel fees allegedly due as a result *351 of Hannoch Weisman’s representation of Brunetti in the tax appeal litigation. The settlement comprehended a payment of $230,000 to Hannoch Weisman, a payment of $50,000 to a valuation expert for appraisal services and testimony at the 1986 trial, a payment to the escrow account of $1,239,000 by the Borough and $650,000 by Brunetti, and a payment to Skoloff & Wolfe of $647,301 for counsel fees and costs in connection with then-representation of the Association. These payments to and from the account left an approximate balance of $900,000 for distribution among those individuals who were tenants in the Brookchester Apartments between January 1, 1975 and December 31, 1981.
Pursuant to this court’s order of June 11,1992 notice was given by Skoloff & Wolfe, as escrow agents, to all tenants at Brookchester Apartments from January 1, 1975 through December 31, 1981 of the proposed settlement of the Hannoch Weisman litigation, indicating, inter alia, the approximate amount available for distribution to tenants. The notice, which was published twice in three newspapers of general circulation in Bergen County, also specified that objections to the settlement were to be filed with this court no later than June 24, 1992, that objections would be heard on June 26,1992 and that claimants should write to Skoloff & Wolfe setting forth their names, current addresses, Social Security numbers and the addresses of the apartments occupied at Brookchester together with the dates of occupancy.
No objections were filed with this court, and, as indicated above, the settlement was approved by order of June 26, 1992.
The Association claims that the entire amount of the escrow fund available for distribution to tenants must be paid to those tenants who have been identified and whose whereabouts are known. The claim is supported by the theory that a judgment or award payable to members of a duly certified class in class action litigation belongs entirely to those members of the class who can be identified and found.
The Association cites no authority in support of its class action theory.
*352 Under R. 4:32-l(a) a class action may be maintained if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims or the defenses of the class and (4) the representative parties will fairly and adequately protect the interest of the class. These threshold requirements have been referred to as numerosity, commonality, typicality and adequacy of representation. In re Cadillac V8-6-4 Class Action, 93 N.J. 412, 424-25, 461 A.2d 736 (1983).
As stated above, the Tax Court certified the intervention of the tenants as a class action in its order of December 8, 1981. Arguably, the certification was unwarranted, as the numerosity requirement was not met. This is not a case involving 7,500 purchasers of the 1981 Cadillac V8-6-4, id. at 419, 461 A.2d 736 nor is it a case involving 25,000 tax refund claims, as in Am. Trucking Ass’n v. Kline, 8 N.J.Tax 181 (Tax 1986), aff'd per curiam, 9 N.J.Tax 631 (App.Div.1987). The case before the court involves tenants for a specified period in one garden apartment complex, all readily identifiable from records maintained by the landlord and, in all likelihood, by the Association as well; it is only the present whereabouts of some of the tenants which is unknown. Even if the intervention by the Association and certain named tenants was properly certified as a class action pursuant to R. 4:32-1,[1] there is no justification for ignoring those tenants who, while identifiable from the appropriate records, cannot be found at this time. As the Supreme Court indicated in Cadillac V8-6-4, a court must be cognizant of the rights of absent class members. 93 N.J. at 424, 461 A.2d 736.
For the foregoing reasons the Association’s claim to all the net proceeds of the escrow fund will be denied.
The other claimants to that part of the escrow fund which is payable to tenants whose present whereabouts are unknown are *353 the State of New Jersey, whose application to intervene has been granted, and the municipality.
The State’s claim is based upon the Uniform Unclaimed Property Act, N.J.S.A 46:30B-1 et seq., while New Milford’s claim is predicated upon an ordinance adopted on December 22, 1992, some eight months after the creation of the escrow fund in question. That ordinance purports to deal with the disposition of refunds arising from successful tax appeals and the reduction of taxes resulting therefrom. Section I of the ordinance provides:
Section I: Chapter 11, Section 9 of the Borough Code, subtitled “Tax Appeals”, shall be deleted and the following substituted therefore: [sic]
a. In the event a tax appeal is successful and the taxes are reduced, the total reduction and refund of taxes received by the landlord shall be returned to the tenant, and the monthly tax surcharge paid by the tenant with his rent shall be reduced accordingly. The refund and reduction in the tax surcharge to each tenant shall be calculated in the same manner as the tax surcharge.
b. Any refund received by the landlord less landlord’s expenses of appeal shall be refunded to the tenant as herein set forth within thirty (30) days of receipt of said refund from the Borough.
c. Landlord, shall give written notice to tenants of any refund due to them under this section at the last known address which is available to Landlord. This section shall not be construed to require publication of notice or any other extraordinary method of locating tenants.
d. In the event that refunds are not claimed by the individual or entity from whose property the refund arose within three (3) years from the date of payment of the refund to the Landlord by the Borough then, upon certification by the Borough Administrator that such refunds have not been claimed, shall be presumed abandoned.
e. Any refund held by a landlord pursuant to this section that has been presumptively abandoned shall be paid by the landlord to the Borough within thirty (30) days of written notice by the Borough.
f. All refunds presumptively abandoned shall revert to the municipal treasury for general municipal purposes, except as provided below.
g. A person claiming an interest in any property presumptively abandoned may file a sworn claim for such property to the Borough Administrator. The Borough Administrator shall consider each claim within ninety (90) days after it is filed and give written notice to the claimant if the claim is denied in whole or in part. The notice may be given by mailing it to the last address, if any, stated in the claim as the address to which notices are to be sent. If an address for notices is not stated in the claim, the notice may be mailed to the last address, if any, of the claimant as stated in the elaim. A notice of denial need not be given if the claim fails to state either the last address to which notices are to be sent or the address of the claimant.
*354 h. If a claim is allowed in whole or in part, the Borough shall pay over or deliver to the claimant the amount of the claim allowed, with interest for the period of time monies were in custody of the municipality, but interest shall not be payable for any period of time before the effective date of this subsection. The rate of interest shall be periodically fixed by the Borough Administrator. [Emphasis added.]
The ordinance is inapplicable, by its own terms, to the escrow account created by this court’s order of June 26, 1992. The fund in question was not “received” by the landlord. The landlord was not responsible for notifying the tenants; that duty was imposed by this court upon Skoloff & Wolfe as escrow agents. No refund is “held” by the landlord, as contemplated by the ordinance.
Municipal ordinances are construed pursuant to the same principles applicable to the construction of statutes. Guill v. Mayor and Council of City of Hoboken, 21 N.J. 574, 122 A.2d 881 (1956); White Castle Systems v. Planning Bd., 244 N.J.Super. 688, 583 A.2d 406 (App.Div.1990). If statutory language is plain, the sole function of the court is to enforce the statute according to its terms. State v. Maguire, 84 N.J. 508, 423 A.2d 294 (1980); Phillips v. Curiale, 128 N.J. 608, 608 A.2d 895 (1992). Put somewhat differently, in the absence of an explicit indication of special meaning, words are to be given their ordinary and well-understood meaning. Service Armament v. Hyland, 70 N.J. 550, 362 A.2d 13 (1976); Mortimer v. Board of Review, 99 N.J. 393, 493 A.2d 1 (1985).
The plain, unambiguous language of New Milford’s ordinance cannot be reasonably construed to apply to the escrow account in question.
Furthermore, the ordinance is preempted by the Act.
While, as New Milford argues, preemption will not be found merely because the Legislature has acted, but only if the Legislature intended to preclude local control, Leone Management Corp. v. Board of Commissioners of West New York, 130 N.J.Super. 569, 580, 328 A.2d 26 (Law Div.1974), aff'd, 144 N.J.Super. 353, 365 A.2d 717 (App.Div.1976), it is abundantly clear that such preclusion is precisely what the Legislature intended.
*355 In considering the adoption of the Uniform Act, the Legislature reiterated the public policy in favor of the custodial taking of unclaimed property by the State Treasurer:
It is the public policy of this State that all unclaimed property shall be placed into the protective custody of the State Treasurer after the property has remained in the hands of the holder for a specified period of time. The rights of the original party in interest shall not be forfeited or extinguished. The State Treasurer serves as the conservator or trustee of the unclaimed property, acting always, and with full authority, to safeguard and foster the rights of the original owner or party entitled to the property.
Any public or private provision, contract, agreement, or understanding in any form shall be void as contrary to this public policy, if the purpose or effect of that provision is to evade, avoid, or contradict the custodial taking of unclaimed property by the State Treasurer.
[Statement to Senate Bill 888 (1983) at 20 (November 23, 1987)].
The case of Overlook Terrace Management Corp. v. Rent Control Bd. of W. New York, 71 N.J. 451, 366 A.2d 321 (1976) sets forth five factors to be considered in preemption analysis:
1. Does the ordinance conflict with state law, either because of conflicting policies' or operational effect (that is, does the ordinance forbid what the Legislature has permitted or does the ordinance permit what the Legislature has forbidden)? ...
2. Was the state law intended, expressly or impliedly, to be exclusive in the field?
3. Does the subject matter reflect a need for uniformity? ...
4. Is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation? ...
5. Does the ordinance stand “as an obstacle to the accomplishment and execution of the full purposes and objectives” of the Legislature? ...
[ 71 N.J. at 461-62, 366 A.2d 321; citations omitted.]
Application of these factors warrants the conclusion that the Act preempts the ordinance.
To begin with, the ordinance conflicts with the act. The ordinance provides that refunds which remain unclaimed for three years shall be presumed abandoned, resulting in a reversion to the municipality. The act, on the other hand, specifically provides that funds held by a municipality which remain unclaimed for only one year after they became payable are presumed abandoned and thus become subject to the custody of the State. N.J.S. A 46:30B-41.2. Also, the ordinance merely requires the landlord to give written notice to tenants at the last known address available to the *356 landlord. The ordinance specifically states that no publication or other extraordinary means of locating tenants is required. The statute, on the other hand, calls not only for written notice by the holder of the property, sent to the owner’s last known address, but for publication of notice by the State Treasurer at least once a week for two consecutive weeks in a newspaper of general circulation in the county in which is located the last known address of any person named in the notice. N.J.S.A 46:30B-50, -51.
Secondly, the State scheme is so pervasive and comprehensive that it precludes the coexistence of municipal regulation. In this regard N.J.S.A. 46:30B-9 provides:
Unless otherwise provided in this chapter or by other statute of this State, intangible property is subject to the custody of this State as unclaimed property if the conditions raising a presumption of abandonment under Articles 2 and 5 through 16 of this chapter are satisfied and the conditions under E.S. 46:30B-10 are satisfied. The common law doctrine of bona vacantia shall remain viable with respect to unclaimed property not covered by this chapter or another statute of this State.
“Intangible property” includes “moneys, checks, drafts, deposits, interest, dividends, and income,” N.J.S.A. 46:30B-6(i)(l), as well as credit balances, customer overpayments, refunds and unidentified remittances. N.J.S.A 46:30B-6(i)(2). The property at issue is money due as a tax refund and is the type of property that was intended to be disposed of pursuant to the act.
Moreover, the pervasive, comprehensive nature of the statute is manifested by the various conditions and enumerated categories of intangible property set forth in Articles 2 (N.J.S.A 46:30B-7, -7.1, -8) and 5 through 16 (N.J.S.A 46:30B-16 through -45).
Thirdly, the legislative intent that the act be exclusive is clear from N.J.SA 46:30B-41.2, which, together with N.J.S.A 46:30B-9, gives the State custodial power over intangible property held by a municipality and unclaimed for more than one year after such property became payable or distributable.
Finally, the nature of the subject matter of the state law cries out for uniform treatment. No good reason can be advanced for treating abandoned intangible property one way in Essex County and another way in Camden County.
*357 The sole remaining issue is whether the statute is presently applicable to unclaimed funds in the escrow account.[2]
Of all the categories of intangible property described in Articles 2 and 5 through 16 of the act only the property described in N.J.S.A. 46:.30B-41 is even remotely similar to the escrow account before this court. That statute provides:
Intangible property deposited or paid into the Superior Court or to the surrogate of any county in this State to the credit of a specific cause or account under the provisions of any law, order, rule, judgment, or decree and remaining unclaimed for a period of 10 years, shall be presumed abandoned.
In this case, while the escrow account was created pursuant to this court’s order and remains subject to court supervision, the account is not, strictly speaking, a deposit held in the Superior Court. Even if it were, the ten-year period referred to has hardly begun to run.
Accordingly, the court concludes that the statute is inapplicable to the escrow account. While N.J.S.A. 46:30B-9 provides that the doctrine of bona, vacantia[3] remains viable with respect to unclaimed property not covered by the Act or by any other statute, the thrust of the act is in the direction of custody of abandoned property not forfeiture. Furthermore, the State does not contend that the doctrine of bona vacantia applies.
Although none of the parties cited it, the court has considered Safane v. Cliffside Park, 5 N.J.Tax 82 (Tax 1982), which involved *358 competing claims of the New Jersey State Treasurer and the Borough of Cliffside Park to property tax refunds payable to property owners whose whereabouts were unknown. The State Treasurer prevailed and the court directed that the funds in question be paid to him to be administered pursuant to the predecessor of the Uniform Unclaimed Property Act. The court concluded that, on equitable principles, the Borough was entitled to no part of the unclaimed funds as the Borough’s assessments exceeded the true value of the property and that excess gave rise to the refunds in question. As the court put it, had the properties in the first instance been assessed at their agreed-on true value, the excess taxes never would have been paid and the Borough never would have received, nor would it have been entitled to receive, those funds. 5 N.J.Tax at 86.
Safane is of limited precedential impact as it does not involve the issues raised in the instant case, namely, class action entitlements, interpretation of municipal ordinances and state law preemption.
Counsel for the tenants association will do the following:
1. calculate the amount of tax refund to which each tenant in residence during one or more of the tax years involved is entitled, taking into account (1) the change in the municipal ordinance increasing the tenants’ share of the refund from 50% to 100% and (2) the impact of the Tenants’ Property Tax Rebate Act. Having ascertained the portion of tax refunds to which each tenant is entitled as though the full amount of the tax refunds for the applicable years were available, each tenant’s share shall be converted to a percentage of the full amount, to be applied to the amount in the escrow account;
2. take further measures to ascertain the' present whereabouts of tenants who are entitled to share in the escrow account, namely, (1) by addressing a letter, certified mail return receipt requested, to the last known address of each such tenant, stating the amount to which such tenant is entitled, and (2) by inquiring of the New Jersey Division of Motor Vehicles. See Safane v. Cliffside Park, supra, 5 N.J.Tax at 84, n. 4;
*359 3. (a) not later than December 1,1993 submit to this court the names, addresses and social security numbers of all tenants entitled to share in the escrow account, stating the amount to which each tenant is entitled;
(b) indicate the names of all tenants whose whereabouts remain unknown on December 1, 1993;
4. not later than January 5, 1994, the amounts payable to tenants whose whereabouts remain unknown on December 1, 1993 shall be paid over to the clerk of the Superior Court for deposit with the Superior Court Trust Fund, to be held and administered pursuant to R. 1:21—6(i).
No further disbursements from the escrow account, other than distributions to tenants or transfer to the clerk of the Superior Court, will be allowed.
All motions for declaratory relief are denied.

 According to the Supreme Court in Cadillac V8-6-4, supra, the trial court can mold the class and, in an appropriate case, even decertify a class. 93 N.J. at 437, 461 A.2d 736.

 N.J.S.A. 46:30B-9 provides that the conditions of N.J.S.A. 46:30B-10 must also be satisfied to give the State custodial power over abandoned property. The latter statute sets forth six conditions, all in the disjunctive. See State v. Elsinore Shore Associates, 249 N.J.Super. 403, 408, 592 A.2d 604 (App.Div.1991). It is almost inconceivable that at least one of those conditions would not be satisfied under the facts of this case.

 Bona vacantia ("vacant goods”) refers to personal property which escheats to the state because no owner, heir or next of kin claims it. Black’s Law Dictionary 161 (5th Ed.1979). Property described as bona vacantia is taken or assumed by the state as its own. State v. Standard Oil Co., 5 N.J. 281, 297, 74 A.2d 565 (1950), aff'd, 341 U.S. 428, 71 S.Ct. 822, 95 L.Ed. 1078 (1951). For the distinction between custody and escheat, see Commonwealth of Pennsylvania v. Kervick, 114 N.J.Super. 1, 8, 274 A.2d 626 (Ch.Div.1971), rev'd on other grounds, 60 N.J. 289, 288 A.2d 289 (1972).